ALLEN et al. v. McKAY & CO. et al.[*]

S. F. No. 2272; August 28, 1902.

70 Pac. 8.

Adverse Possession—Claim of Title.—Code of Civil Procedure, Section 321, provides that in every action for the recovery of real property the person establishing legal title is presumed to have been possessed thereof within the time required by law, and the occupation of the property by any other person is deemed to have been in subordination to the legal title, unless there has been adverse possession for five years. Held, that where, in a suit to recover realty claimed by defendant by adverse possession by herself and predecessors, there was evidence sufficient to overcome the presumption in favor of plaintiff raised by the statute, but one witness testified that one of defendant's predecessors, in answer to a direct question by plaintiff's attorney, stated he did not claim title, and accepted a license to use the land, and it appeared that another predecessor also disclaimed, the jury were justified in finding that defendant's predecessors held in subordination to plaintiff's title.

Adverse Possession—Landlord and Tenant.—Code of Civil Procedure, Section 326, provides that when the relation of landlord and tenant has existed the possession of the tenant is deemed the possession of the landlord until the expiration of five years from the time of the last payment of rent, though the tenant may have claimed to hold adversely. Held, that where one holding land jointly with others in subordination to the title of the owner secures a deed from the others of their interests, it will not be presumed that she then set up an adverse claim, or that the character of her possession was changed.

Adverse Possession—Evidence.—Where Land was Claimed by Adverse possession, and the only evidence of actual adverse possession was testimony of defendant's superintendent that "we claimed title to the land in defendant," the evidence was insufficient.

Appeal.—Where on Appeal a Question has Been Held to have Been One for the jury, and on a second trial the jury, on the same

---

[*]For subsequent opinion in bank, see 139 Cal. 94, 72 Pac. 713.

63

and additional evidence in support of their prior finding, have found the same way as before, the finding cannot be questioned.

Taxation.—A Blank Form of the Statement under oath, required of owners of property by Political Code, section 3629, unsigned by them, on which is written an unsigned memorandum containing a description of the property, and under the head of "Value of Real Estate" the figures "20,000," and under that of "Value of Improvements" the figures "800," the dollar-mark not appearing, did not constitute an asessment of the property, which could be effected only by the insertion in due form in the completed assessment-book, and the certification of the latter by the assessor, as required by section 3652.

Taxation—Description of Land.—Political Code, Section 3650, relative to taxation, provides land shall be described in the assessment-book by township, range, section or fractional section, and when not a congressional division or subdivision, by metes and bounds, or other identifying description. Held, that a description by township, range and section, in connection with official surveys and plats, was sufficient.

Adverse Possession—Pleading Title by.—Code of Civil Procedure, section 437, provides an answer must contain a denial of the allegations of the complaint and statement of any new matter constituting a defense or counterclaim. Held, that in a suit for possession of realty a claim of title by prescription, in order to be taken advantage of, should be pleaded.

Adverse Possession—Presumption.—Where in a Suit to Recover Possession of land defendant claims title by prescription, but there is no evidence of an adverse claim, her user is, under Code of Civil Procedure, section 321, to be presumed in subordination of plaintiff's title. The presumption is not defeated by a deed to defendant which conveyed not an easement, but the title, taken in connection with circumstances tending to show the deed not bona fide.

Adverse Possession — Payment of Taxes.—Where Defendant Claimed by adverse possession, but it appeared she had not paid taxes as required, refusal of instructions as to adverse possession were harmless.

Adverse Possession—Defendant in a Suit to Recover Possession of land claimed an easement, and the court instructed that the easement could only be sustained by proof of adverse possession for five years, and that, to have been adverse, it must have been asserted under a claim of title with knowledge and acquiescence of plaintiff. Held, that the instruction was not misleading in connection with the following instruction, in which the court charged that it is not necessary to prove actual knowledge, but is sufficient if the adverse claim made and the facts were such that the plaintiffs ought to have known of their existence.

Adverse Possession.—Where, in a Suit to Recover Possession of land used by defendant's grantors, in connection with their mill

for booming purposes, the defendant claimed by adverse possession of the grantors, whose deed to defendant was of the mill and "appurtenances," it was not error to refuse to permit defendant to prove that mills are usually conducted with booms, and that their use is customary; there being no question as to the fact that the land in dispute was used with the mill in such a way that, assuming it to have been owned by the owners of the mill, or in their adverse possession, it would have been appurtenant thereto.

**Trial.—Remarks of Counsel, Which the Jury** were instructed to disregard, are no ground for reversal.

APPEAL from Superior Court, Humboldt County; G. W. Hunter, Judge.

Action by Aaron C. Allen and others against McKay & Co. and others. From a judgment for plaintiffs and from an order denying a new trial defendants appeal. Affirmed.

Mastick, Belcher & Mastick for appellants; Knight & Heggerty, Geo. C. Sargent, S. M. Buck and J. F. Coonan for respondents.

PER CURIAM.—This is an appeal from a judgment for the plaintiff in an ejectment suit and from an order denying the defendants' motion for a new trial. The case was before this court on a former appeal by the defendants, resulting in a decision in their favor, reported 120 Cal. 333, 334, 52 Pac. 828, to which reference may be made for the facts of the case. To the statement there given it must be added that the Occidental Mill Company was originally the property of Evans & Co., then of McKay & Co. (composed of Allen McKay, Connick and Sinclair; the interest of the first being three-fourths, of the second three-eighths, and of the third one-eighth), and then of the original defendant Rebecca McKay (grantor of the present defendant, McKay & Co.), who, upon the death of McKay, as his widow, had succeeded to his interest, which was distributed to her May 27, 1887, and who had subsequently, by deed of date September 12, 1888, succeeded to the interests of Connick & Sinclair. The sole defense on the former as on the last trial was the statute of limitations; as to which it is stated in appellants' brief: "The defendants . . . . relied: (1) On an adverse possession in fee by Rebecca McKay from April 30, 1889, to April 30, 1894; (2) on an

adverse enjoyment by her, for the same period, of the ease-
ment of storing logs on the property, and of maintaining
thereon a boom for that purpose; and (3) on an adverse pos-
session by their predecessors from 1871 to 1877." With re-
gard to the last claim, the appellants' counsel, "to avoid
trespassing on the time of the court, . . . . omit . . . . discus-
sion," and we will do the same. But it may be said gener-
ally that the evidence cited by the counsel for the respondent
was at least sufficient to justify the verdict in this particular.
It remains only to consider the claim of adverse possession
by Mrs. McKay, and the alternative claim of an easement ac-
quired by her by prescription.

With regard to the former, it is claimed by respondent's
counsel that "the most important, and practically the only,
question as to the adverse possession of Rebecca McKay is
whether or not any tax was assessed against this property for
the year 1889, and, if so, whether it was assessed before or
after April 30, 1889." But it is also an important question
whether her possession was otherwise adverse—i. e., under
"claim of title exclusive of other right"—and we are cited
to no evidence of such claim. Nor is the subject discussed
by the counsel; though the contrary is claimed by the re-
spondent's counsel, and testimony cited tending strongly to
support their position. Assuming, however, for the purposes
of the decision, that with reference to the predecessors of
Mrs. McKay there was such evidence, and of a kind suffi-
ciently cogent to overcome the presumption to the contrary
(Code Civ. Proc., sec. 321), yet it appears from the testimony
of one of the witnesses, uncontradicted on this point, that in
the year 1878 Allen McKay, in response to a direct inquiry
from the witness, as attorney of the plaintiff, stated, in effect,
that the firm did not claim title to the land, but merely
wanted to use it for boom purposes, and accepted from the
witness a license to continue such use; and from the testimony
of the same witness it also appears that in the years from
1883 to 1885 Sinclair, another partner, on behalf of the firm,
also disclaimed, and made a proposition to purchase the land
from the plaintiffs. The jury was therefore justified in find-
ing, with reference to the period anterior to the accession of
Mrs. McKay to the property of the firm, that it was held by
them in subordination to the plaintiff's title, which leaves for
consideration only the subsequent claim of Mrs. McKay. In

this connection much stress is laid by appellants' counsel on the deed to her from Connick & Sinclair of date May 27, 1887, which, besides conveying to her the interests of the partners in the property of the firm, purported also to convey to her a tract of land, which is claimed by the counsel, and for the purposes of the decisions may be assumed, to be the land or part of the land in question; the claim being that Mrs. McKay entered on the land in controversy under this deed, and also that she entered under adverse claim of title founded on it. But we are cited to no evidence in support of either proposition, nor have we been able to find any. As to the former, it is clear from the evidence that she originally became possessed of the property in common with Connick & Sinclair under the decree of distribution, and that her possession was thus, like theirs, in subordination to the plaintiff's title; nor can it be assumed from the mere fact of the deed, in the absence of other evidence, that the nature of her possession was changed, or that she then or subsequently (prior to the payment of taxes in 1890) set up an adverse claim to the land. But, on the contrary, the presumptions are all the other way: Code Civ. Proc., secs. 321, 1849, 1963, subd. 19, and sec. 326. Nor have we been cited to, or been able to find in the transcript, any evidence of such claim on her part. The only evidence we have found approaching the subject is the testimony of Loggie, superintendent of the mill, who says: "I have never, since September 12, 1888, seen anybody in the possession of that place, except McKay & Co. Nobody that I know of came there and claimed possession until notice was served on us about a year before this suit was commenced. We claimed title to it in Mrs. McKay from that time down to now." Here, possibly, the reference intended by the witness was to the former date, September 12, 1888, and not to the "year before the suit"; though such is not the grammatical construction, nor can we say that such was the intention of witness; nor, if it were, would the evidence be of a very convincing character. It must be held, therefore—whether the land in question was assessed for the year 1889, before or after April 30th of that year—that the verdict is sustained by the evidence. With regard to the date of the assessment of the land in question for the year 1889, it was held by this court on the former appeal, on the evidence then before it, that this was a question for the jury, and the judgment was

reversed on the ground that the court had refused to give an instruction asked by the appellants on this point. On the new trial this instruction was given by the court, and the jury, on the same evidence that was given on the former trial, and additional evidence introduced by the respondents tending to show that the assessment was made subsequent to April 30th, again found in favor of respondents. We cannot, therefore, without disregarding the former opinion, question the finding of the jury on this point; for if, as claimed by respondents' counsel, the evidence then and now before the court was "conclusive on the subject," it could not have been held to be a question for the jury. This consideration disposes of the question; but to prevent misunderstanding of the decision of this court on the present and on the former appeal, and as bearing on the subject of the instructions hereafter to be considered, some further observations will be appropriate.

On the former trial, the only evidence upon the question before this court was the testimony of Wallace, the assessor, and the document introduced in connection therewith. This witness testified that the assessment in question "for the year 1889 was made upon the seventh day of March of that year," and in connection with his testimony the witness produced and the defendants read in evidence "the said assessment"; but the document itself does not appear in the statement and was therefore not before this court. In the record now before us the document itself is set out, and it thus now appears that it was not an assessment, but merely a blank form of the statement under oath, required of the plaintiffs as owners of property by section 3629 of the Political Code, unsigned by them, on which is written an unsigned memorandum containing a description of the property, and under the heading "Value of Real Estate" the figures "20,000," and under that of "Value of Improvements" the figures "800"—the dollar-mark not appearing. This manifestly did not constitute the assessment of the property, which could be effected only by the insertion in due form in the completed assessment-book, and the certification of the latter by the assessor either by the affidavit prescribed by section 3652 of the Political Code or by some other mode of authentication: People v. San Francisco Sav. Union, 31 Cal. 139; People v. Stockton & C. R. Co., 49 Cal. 421. It may be added that it now appears from

the testimony of the deputy assessor, Carr, that the entry of the assessment in the assessment-book was subsequent to the time the witness began to make up the assessment-roll for the township, which was not until "the first part of May or the latter part of April," and that the assessment was not completed until the morning of the first Monday of July, on which day it was for the first time signed or certified by the assessor. It also appears from the assessment-book itself that the so-called assessment entered on the statement of the property of the plaintiffs was not inserted therein, but other figures, with the dollar-mark attached, showing a different valuation of the property, viz., "$15,000." It is therefore now manifest that the property was not assessed until after the thirtieth day of April, 1889; and hence it is clear—assuming the validity of the assessment—not merely that the verdict of the jury was justified by the evidence, but that it appears conclusively from the evidence that the plaintiffs' cause of action was not barred by the adverse possession of Mrs. McKay.

Nor can the contention of the counsel for appellants that the description of the property assessed is insufficient, and the assessment consequently void, be admitted. The land is described by township, range, section and fractional section, as in the patent, which, in connection with the official surveys and plats, is sufficient: Pol. Code, sec. 3650. The expression "a congressional division or subdivision," used in the section cited, refers, not to divisions and subdivisions as actually surveyed by the United States surveyor general, but to the divisions and subdivisions provided by act of Congress—such as townships, sections, etc.—and is therefore to be construed as synonymous with the preceding clause, "township, range," etc. The act is therefore to be understood simply as requiring that the description shall be either "by township, range," etc., or by metes and bounds, or some other description sufficient to identify it. And this construction seems to be required by reason of the act, for it is clear that a description by government subdivisions is quite as sufficient a description of public lands of the state as of public lands of the United States; nor can it be supposed that the legislature intended to accord less weight to the acts of officers of the former than to those of officers of the latter.

With regard to the claim of prescription, it may be observed that it is in fact not pleaded, and hence that the question was not at issue in the case (Code Civ. Proc., sec. 437); but the jury were instructed as though the matter was in issue, and the case will be considered on that hypothesis. But, as we have pointed out, there is no evidence tending to show an adverse claim to the land on the part of Mrs. McKay; nor is there any evidence tending to show a claim by her to an easement in the land. The presumption, therefore, is that her user, as her possession generally, was in subordination to the plaintiff's title (Code Civ. Proc., sec. 321); and this presumption is strongly supported by the affirmative evidence that the possession of her predecessors was under the license of the plaintiffs. Nor is the presumption affected by the deed referred to, which purports, not to transfer an easement, but to convey the land, and which, under the circumstances of the transaction, and in the absence of any explanation as to the motives of the parties, can hardly be regarded as a bona fide transaction. It is rather to be regarded merely as one of the private means by which (to use the language of Connick) the parties to the deed "were preparing to hold [the] property if [they] could possibly do so." The verdict of the jury, therefore (if we regard the matter as in issue), was in this respect also fully justified by the evidence.

Of the alleged errors as to instructions, some refer exclusively to the claim of adverse occupation by Mrs. McKay during the five years preceding the commencement of the suit, April 30, 1894; and as it appears from uncontroverted evidence that she did not pay the taxes assessed on the land in the year 1889, her case could not have been helped by the instructions refused, or hurt by those given, and the errors, if any, must therefore be regarded as immaterial.

Other instructions refused were clearly covered by the instructions given. Of the instructions objected to—two in number—one is not very happily expressed, but, taken in connection with the instruction immediately following, cannot be regarded as misleading. In the former the jury are instructed with reference to the claim of easement that it could be sustained only by proof of adverse possession for five years, and that, "to have been adverse, it must have been asserted under a claim of title or right with the knowl-

edge and acquiescence of the plaintiff.'' But the remaining portions of the instruction refer to the acts from which such knowledge should be inferred, and in the next instruction the jury is instructed that ''it is not necessary to prove actual knowledge; it is sufficient if the adverse claim made and the facts were such that the plaintiffs ought to have known of their existence.'' The other instruction objected to does not seem to be open to objection.

The objections to the rulings of the court as to evidence are also untenable. The court did not err in refusing to permit the defendants to prove by the witness Way that mills are usually conducted with booms, and that their use is customary. There was no question as to the fact that the land in dispute was used with the mill in such a way that, assuming it to have been owned by the owners of the mill, or in their adverse possession, it would have been appurtenant thereto. Nor, without the evidence, could there be any doubt in the minds of the jury that, assuming the ownership or adverse claim of ownership by the owners of the mill, their interests or claims passed by the deeds. The objections to what was said by Mr. Buck, the counsel for the plaintiff, with reference to the map introduced by Shaw, are also without ground. The court instructed the jury to disregard remarks by counsel. Nor, indeed, do we see anything objectionable in what was said by the counsel, which was designed merely to bring out a point on which he proposed to contest the correctness of the map, and thus to direct the attention of the court and jury to the question thus raised. The remaining objection relates to a question asked the defendant Carr with relation to the supposed assessment of the land of date March 7, 1889. But as it is clear from the evidence now before us that this under no circumstances could have constituted an assessment, the ruling could not have affected the case.

For the reasons given, the judgment and order appealed from must be affirmed, and it is so ordered.