[S. F. No. 415. In Bank.—March 22, 1898.]

CHARLES F. ALLEN et al., Respondents, v. McKAY & CO., a Corporation, et al., Appellants.

ADVERSE POSSESSION—PRESCRIPTIVE TITLE—PAYMENT OF TAXES—CONSTRUCTION OF CODE—TAXES "LEVIED AND ASSESSED"—ASSESSMENT PRIOR TO FIVE YEARS—SUBSEQUENT LEVY.—The intention of the legislature in requiring the payment of all taxes "levied and assessed" upon land adversely claimed and possessed continuously for five years, under the terms of section 325 of the Code of Civil Procedure, is to refer to the act of the supervisors in making the levy, and the act of the assessor in making the assessment, and to require that the taxes must be both levied by the board of supervisors and assessed by the assessor upon the land during the period covered by the adverse possession for five years, in order to require payment of them as a condition of such adverse possession; and if an assessment was in fact made by the assessor more than five years before the commencement of an action to recover the possession, the fact that it was levied within the five years does not require it to be paid, and if a tax is levied after the expiration of the five years, the fact that it was assessed within the five years does not require the payment in order to complete the prescriptive title.

ID.—ADVERSE POSSESSION PRIOR AND SUBSEQUENT TO MAY 31, 1878.—A person holding adverse possession prior to May 31, 1878, when the amendment of the code took effect, might add his prior adverse possession to his adverse possession subsequent to that date, and was only required to pay taxes levied and assessed upon the land within the period after that date, required to complete the statutory period of five years.

ID.—ADVERSE POSSESSION OF TIDE LANDS—RIGHTS OF UNITED STATES.—Tide lands patented by the state may be acquired by adverse possession as against the patentee; and any rights of the United States in such

lands are unaffected by an action between the patentee from the state and an adverse claimant, and need not be considered for any purpose in such action.

Id.—Usual Improvement of Tide Lands—Instruction.—Tide lands may be said to be usually improved within the meaning of section 325 of the Code of Civil Procedure, when improved as similar property is improved, and an improvement thereof does not necessarily mean structures or buildings thereon; but. a requested instruction to the effect that "an improvement may mean to employ advantageously, or to enhance its value, or to occupy for a beneficial purpose pursued during occupation," is too broad, and is properly rejected.

Id.—Boom Sticks and Fastenings—Substantial Inclosure.—Boom sticks fastened together and also fastened to piles, surrounding a boom on all sides continuously, and constituting a boundary and inclosure for the boom sufficient for all of the purposes to which the same was or could be applied, constitutes a substantial inclosure of tide lands within the meaning of section 325 of the Code of Civil Procedure.

Id.—Ejectment—Outstanding Title by Adverse Possession—Loss by Statute of Limitations.—In an action of ejectment, an outstanding title in a stranger created by adverse possession, which is barred by the statute of limitations, is not such a present, live, effective, outstanding title as would defeat the plaintiff's cause of action.

Id.—Adverse Possession Created by Different Parties—Privity of Estate.—Privity of estate is absolutely necessary, in order that various periods of adverse possession created by different parties may be tacked together.

APPEAL from a judgment of the Superior Court of Humboldt County and from an order denying a new trial. G. W. Hunter, Judge.

The facts are stated in the opinion of the court.

Mastick, Belcher & Mastick, and W. B. Treadwell, for Appellants.

Buck & Cutler, for Respondents.

GAROUTTE, J.—This is an action to recover possession of a certain tract of land situated in Humboldt county. This land is covered by the waters of Humboldt bay. Plaintiffs rely upon a patent from the state of California, in which the lands are described as state tide lands. Defendants rely upon title by prescription, or adverse possession. The present action was brought April 30, 1894. In the year 1871 a number of persons composing the firm of Evans & Co. became the owners of a tract of land ad-

joining the premises in controversy, upon which was situated a sawmill, and which property was known as the Occidental Mill property. The business of this firm and the ownership of this property continued by itself and its grantees down to September 12, 1888, at which time the entire title vested in defendant Rebecca McKay. The various deeds of conveyance transferred the Occidental Mill property and its "appurtenances." From 1871 to the commencement of this action the various owners of the mill property, in connection with the mill, used the property in controversy as a boom, viz., as a storage place for saw logs. This boom or storage place was inclosed by piles driven into the ground, to which were attached by chains continuous series of heavy timbers called boom sticks. Upon the land side the inclosure was completed by pickets driven into the soil.

The merits of this litigation to a considerable extent revolve around that provision of the law relating to the payment of taxes by an adverse occupant of land. It is there provided: "In no case shall adverse possession be considered established under the provision of any section or sections of this code, unless it shall be shown that the land has been occupied and claimed for the period of five years continuously, and the party or persons, their predecessors and grantors, have paid all the taxes, state, county, or municipal, which have been levied and assessed upon such land." (Code Civ. Proc., sec. 325.) This provision of the law took effect May 31, 1878. The language of the provision, to the effect that the party in possession must "have paid all the taxes . . . . which have been levied and assessed upon such land," is not well chosen, inasmuch as it can hardly be said that taxes are assessed upon the land. But the intent of the law-making power is reasonably plain; and a fair construction of the language is that the word "levied" refers to the act of the board of supervisors in making the levy, and the word "assessed" refers to the act of the assessor in making the assessment. This construction being adopted, we agree with appellant that by the words of the provision itself both the assessment and levy must be made while the occupant is in possession, or he is not called upon to pay the tax. It is insisted that such construction might result in the creation of an adverse title by the payment of the taxes for only four years. But that

fact is immaterial.  A compliance with the demands of the stat-
ute is all that can be asked.  What are those demands, is the
important question, and not what are the results to follow from
a compliance with them.

The question we have been discussing becomes most material
in this case.  It is conceded that defendants paid no state or
county taxes levied during the year 1889.  The action being
brought April 30, 1894, to establish an adverse possession for
the five years next preceding the commencement of the action,
it was necessary to prove the payment of all taxes levied and
assessed during that term of five years, that is, all taxes levied
and assessed subsequent to April 30, 1889.  If the state and
county taxes for the year 1889 assessed upon this land were
"assessed" prior to April 30, 1889, then the defendants were not
called upon to pay them, even though those taxes were levied
subsequent to that time, for, as we have seen, the taxes must be
both levied and assessed within the five years of adverse occu-
pancy.  As to what constitutes the assessment of any particu-
lar tract of land by the assessor, within the purview of this stat-
ute, we are not called upon to decide.  Neither will we deter-
mine under the evidence before us the particular day upon
which this land was assessed.  Whether or not it was assessed
prior or subsequent to April 30, 1889, was a question of fact es-
sentially for the jury and not the trial judge.

The court instructed the jury as to the law bearing upon this
question of payment of taxes, in general accord with the case
of *Brown v. Clark*, 89 Cal. 196.  It is there declared: "The duty
laid upon the occupant is to pay all taxes which have been lev-
ied and assessed against the land during his term of continu-
ous occupancy and adverse claim of right for five years.  If he
does this, he can maintain his position as against the person who
would otherwise be the owner of the land."  This instruction
was directly in line with the statute and clearly sound.  But ap-
pellant's counsel asked the court to give the following instruc-
tion to the jury, which request was refused: "Since 1878, to
acquire a title to land by adverse possession, it has been neces-
sary that the persons claiming such adverse possession should
pay all taxes, state, county, and municipal, levied and assessed
during the period covered by his adverse claim, and I instruct

you that, unless the taxes so mentioned were both levied and assessed within the period covered by his claim, the adverse claimant is not obliged to pay the same. In other words, if the taxes were levied within the period covered by his claim, but assessed before the period covered by his claim, or, if the taxes were assessed during the period, but not levied until after the period had expired, the adverse claimant is not obliged to pay such taxes. In other words, as I instructed you before, the adverse claimant is obliged to pay such taxes only as are both assessed and levied within the period covered by his claim." In view of the fact that it was a material question in the case when the state and county taxes for the year 1889 were assessed, in view of the further fact that the assessment and levy of 1889 must both have occurred within the five year term of adverse occupancy in order that defendants were required to pay the taxes for that year, and in view of the further fact that a jury, in the absence of an explicit instruction bearing upon this point, might well conclude that the levy of the tax alone within the term of adverse occupancy would be sufficient to require a payment of the tax by defendants, we are satisfied the instruction asked should have been given. It is sound law, directly bearing upon the issue under investigation, and would have been of material assistance to the jury in arriving at a just verdict. In the absence of such an instruction, we are not satisfied that the jury made a proper application of the facts to the law of the case.

The title by adverse possession relied upon by defendants was created at either one of two periods of time. The provision of the statute as to the payment of taxes taking effect May 31, 1878, defendants' title was either created between 1871 and that date, or it was created during the five years next preceding the commencement of the present action. For it is conceded that defendants paid no taxes upon this property subsequent to May 31, 1878, until the year 1890. Hence, that time could form no element in the creation of the title for the earlier period. The court gave the jury the following instruction, which appellants strenuously insist was error: "You are instructed that an adverse, open, notorious, exclusive possession for the period of five years extinguishes the right of the party

having the true title, and vests a perfect title in the adverse holder, if such possession had so existed for five years before the first day of April, 1878; and if such possession existed for five years and was not completed before said first day of April, 1878, then the person in possession of the land must have paid all the taxes, state, county, and municipal, which had been levied and assessed upon such land during the whole of a continuous period of five years subsequent to the first day of April, 1878." By this instruction the date at which the statute took effect is fixed at April 1, 1878. The true date should be May 31, 1878, sixty days after the passage of the act, but this mistake is harmless. The instruction as a whole is unsound in declaring that a period of time of adverse possession, immediately prior to the taking effect of the statute, could not be added to a period of time immediately succeeding the taking effect of the statute, in order to make up the full complement of a five years' term of adverse possession. It is certainly not true that a person holding adversely when the statute took effect must pay taxes for a full continuous period of five years subsequent to the taking effect of the statute. His adverse possession prior to May 31, 1878, may be added to his adverse possession subsequent to that date, and his title is perfect and complete when the sum total of these two periods of time equals the prescribed statutory period. But no harm ensued to appellants from this instruction, for it is conceded that no taxes were paid by them until 1890; and it necessarily follows that the conditions outlined in the instruction were not in the case. There was no evidence bearing upon the point, and the error was purely abstract and not prejudicial.

The opinion of the court denying appellants' motion for a new trial is attached to their brief, and it appears therefrom that the court was somewhat in doubt as to whether or not lands covered by navigable waters could be acquired by adverse possession. If the law is such as the court by its opinion seems to indicate, then the plaintiffs in this action should have lost their case. They rested their cause of action upon a patent from the state. They were out of possession, and had nothing but a paper title upon which to base their action. If they had sufficient title upon which to base the action, then they

had a title which could be lost by an adverse possession. If the land in controversy was not private property, plaintiffs had no title. If it was private property, there certainly could be an adverse occupancy of it for the statutory period. Furthermore, this litigation only affects the parties to it. The United States is unaffected by it, and may litigate its claims whenever moved so to do. It was said in *Hayes v. Martin,* 45 Cal. 563: "It is not requisite that the party who relies upon the statute should show that he claims title in hostility to the United States. He may admit title in the United States, either with or without a claim on his part of the right to acquire the title from the United States, and it is sufficient if he has such possession as is required by the statute, and claims in hostility to the title which the plaintiff establishes in the action." (See, also, *McManus v. O'Sullivan,* 48 Cal. 16.)

Section 325 of the Code of Civil Procedure provides: "For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument, judgment, or decree, land is deemed to have been possessed and occupied in the following cases only: 1. Where it has been protected by a substantial inclosure; 2. Where it has been usually cultivated or improved."

As explanatory of the second subdivision of the section, appellants asked the following instruction: "A piece of property is said to be usually improved or improved in the usual manner, when it is improved as similar property is improved. *An improvement may mean to employ advantageously, or to enhance in value, or to make better, or to occupy for a beneficial purpose pursued during occupation. It does not necessarily mean buildings or structures thereon.*"

The court refused to give this instruction as requested, but modified it by omitting therefrom the words in italics. The last sentence could well have been given, but portions of the instruction were properly rejected. Those portions took too wide a scope. The mere beneficial user of this land for hunting, fishing, or bathing would probably have come within the signification of the language used, yet certainly those things are not meant by the words "usually improved." The court refused to give the following instruction: "If you find from the

evidence that the boom testified to by the witnesses for the defendants was surrounded on all of its sides continuously by boom sticks fastened together, and also fastened to piles, and that such boom sticks and fastenings constituted a boundary and inclosure for the boom sufficient for all of the purposes to which the same was or could be applied, then I instruct you that the same was substantially inclosed."

This instruction should have been given. It contains a sound principle of law, and was clearly applicable to the facts of the case.

It is contended that an outstanding title was shown in Evans & Co., if their title did not pass to these defendants. As previously suggested, if Evans & Co. had a title at any time, it was created by adverse possession occurring prior to May 31, 1878. And, even if it be conceded that a defendant in ejectment may show an outstanding title in a stranger created by adverse possession, for the purpose of defeating a plaintiff's cause of action—a proposition not decided—still this claim of appellants has no merit. For an action based upon such title would be barred by the statute of limitations, and a title so barred is not such a present, live, effective, outstanding title as would defeat plaintiff's cause of action. (*Totten v. James*, 55 Mo. 494; *McDonald v. Schneider*, 27 Mo. 405; *Hoag v. Hoag*, 35 N. Y. 473; *Griffin v. Sheffield*, 38 Miss. 359; 77 Am. Dec. 646; *Jackson v. Schauber*, 7 Cow. 187.) In this direct connection it may be further suggested that a privity of estate is absolutely necessary before various periods of adverse possession created by different parties may be tacked together, and, as to the land in controversy, the existence of such privity between the various grantees of the Occidental Mill property, prior to 1878, is not entirely plain.

We do not deem it necessary to discuss the various other questions raised upon this appeal.

For the foregoing reasons the judgment and order are reversed and the cause remanded for a new trial.

Van Fleet, J., Henshaw, J., McFarland, J., and Temple, J., concurred.

HARRISON J., dissenting.—I dissent from the construction which is given in the foregoing opinion to the provisions of section 325 of the Code of Civil Procedure. By the terms of that section a person claiming title to land by adverse possession must show, in addition to an occupancy and claim for the period of five years continuously, that he has paid "all the taxes which have been levied and assessed upon such land." To hold that the term "assessed," as used in this clause, refers to the act of the assessor in making the assessment or valuation of the land as the basis for apportioning the taxes is, in my opinion, erroneous, and neither justified by the language of the section nor consistent with its purpose. The natural construction of the phrase "all the taxes which have been levied and assessed upon such land" would refer the word "assessed" to the previous word "taxes," and its position after the word "levied" would imply that it referred to some act or step subsequent to the levy of the taxes. The word is used in the Political Code with different significations, and the meaning to be given to it in any particular case is to be determined from the context, as well as from the subject matter in reference to which it is used. The provision in section 3627 that all taxable property is to be "assessed" at its full cash value refers to an assessment of the property, and is an act entirely different from an assessment of "taxes" upon the property. It means a valuation of the property as a basis for determining the rate of tax to be subsequently levied, and for computing the amount of taxes to be paid for each piece of property. If, under the revenue system of this state there is any provision by which taxes are "assessed" upon land, as distinguished from the valuation of the land by the assessor, the term used in this section should be construed in reference to that act.

The primary meaning of the term "assess" is to apportion or fix the amount of a tax to be paid or contributed; and from this meaning has arisen a secondary or derivative use of the word signifying the valuation of property for the purpose of forming the basis upon which the tax is to be computed. The term is also used at times to include all the steps involved in imposing a tax upon property. (*San Luis Obispo v. Pettit,* 87 Cal. 499.)

In the Century Dictionary, and also in the Imperial Dictionary, its primary meaning is given to be: "To set, fix, or charge a certain sum upon by way of tax; as, to assess each individual in due proportion." Skeat in his Etymological Dictionary defines the word, "to fix a rate or tax." He also says: " 'Assess' and 'assessment' are coined words due to the use of the Law Latin 'assessor'—one whose duty it was to assess, i. e., to adjust and fix the amount of the public tax"—referring to Du Cange, who in his Glossary of Medieval Latin defines "assessor" as *"qui tributa peraequat vel imponit."* In Murray's Historical Dictionary of the English language the word is defined: "To settle, determine, or fix the amount of (taxation, fine, etc.) to be paid by a person or community, or by each member of a community." In Abbott's Law Dictionary the term is defined: "To determine by rules of law a sum of money to be paid; to rate the proportional contribution due from another person to a fund; to fix the amount payable by a person, or each of several persons, in satisfaction of an established demand." In Anderson's Law Dictionary it is defined: "To rate or fix the proportion which each person is to pay of a tax. To tax. To adjust the shares of a contribution by several persons toward a common object according to the benefit received. To fix the value or the amount of a thing. To determine by rules of law a sum to be paid; to rate the proportional contribution due to a fund."

All the acts performed by the assessor for the purposes of taxation are preliminary to the levying of the tax, and are complete before any tax is levied. After he has completed the assessment-book, and entered therein his valuation of all the property upon which taxes are to be paid, the board of supervisors, under the provisions of section 3714 of the Political Code, is required to fix the rate of county taxes, and to "levy the state and county taxes upon the taxable property of the county," which act, as the section stood at the times involved herein, was to be performed on the first Monday of October in each year. After the taxes have thus been levied the auditor is required by section 3731 to "compute and enter in a separate money column in the assessment-book the respective sums in dollars and cents to be paid on the property therein enumerated." This act of the auditor constitutes the assessment of the taxes

"upon" the several parcels of land in the assessment-book. It is an apportionment and determination of the respective portions of the entire tax which are to be paid for the several parcels of land, and is the act by which the taxes are "assessed" upon each of those parcels. It is the taxes which are thus levied and assessed within the five years of adverse occupancy and claim which, in my opinion, must be paid by the claimant before his adverse possession is shown to have been established.

The action herein was commenced April 30, 1894, and it is conceded that the defendants did not pay the taxes for the fiscal year ending June 30, 1890. These taxes could not be levied until the first Monday of October, 1889, and, under the foregoing considerations, could not have been "assessed" until after that date. The court, therefore, did not err in declining to give to the jury the instruction asked by the defendants to the effect that it was unnecessary to pay any taxes that were assessed before the period covered by his claim, although they were levied within that period, since such an instruction was not justified by any evidence in the case, and was in point of law self-contradictory. If it was intended by the instruction that the jury should be told that the valuation of the property by the assessor must have been made within the period of the claim, the court properly refused it as not being justified in point of law. The court did instruct the jury at the request of the defendants that if, in addition to their adverse occupancy, they had paid all of the taxes levied and assessed upon the land between the time of their entry on the 29th of April, 1889, and the commencement of the action, they had a good title to the property at the time the action was commenced, and the defendants were entitled to a verdict. This instruction sufficiently presented the law upon this point applicable to the facts of the case.

Rehearing denied.

Beatty, C. J., dissented from the order denying a rehearing in Bank.