## TOLTEC RANCH COMPANY v. COOK.

### ERROR TO THE SUPREME COURT OF THE STATE OF UTAH.

No. 48.   Argued November 3, 1903.—Decided December 21, 1903.

Adverse possession gives a title to land together with the remedies which attach to the title as effectually as a conveyance from the owner.

Adverse possession under claim of right for the period prescribed by the statute of limitations of the State of Utah after the act granting the land and before a patent has been issued by the United States to the Central Pacific Railroad Company for a part of its land grant within that State, and not within its right of way, will prevail against the patent.

THE Toltec Ranch Company, a California corporation, brought this action in 1901 in the District Court of the First Judicial District, Box Elder County, State of Utah, to quiet title to the S.E. ¼ of the S.E. ¼ of section 27, township 8, north of range 2 west, Salt Lake meridian, United States survey. Title in fee was alleged. The defendants answered separately,

claiming different portions of the land, and each alleged peaceable, continuous and adverse possession under claim of title in himself and grantors adversely to the plaintiff for more than thirty years, and that plaintiff's cause was "barred by the statute of limitations as provided by sections 2856 and 2872, inclusive, of the Revised Statutes of Utah." Under these sections to constitute a bar there must be an adverse holding for at least seven years.

The title of plaintiff, it was admitted, was derived as follows: Patent from the United States dated January 20, 1900, to the Central Pacific Railroad Company; the railroad company by deed dated October 17, 1895, to D. P. Tarpey; the latter and wife to M. F. Tarpey by deed December 8, 1895; M. F. Tarpey to plaintiff, October 17, 1896. The patent to the company was issued in pursuance of the grant to the company made by the act of Congress approved July 1, 1862, as amended by the act of July 2, 1864, to aid in the construction of a railroad and telegraph line from the Missouri to the Pacific Ocean. 12 Stat. 489, c. 120; 13 Stat. 356, c. 216.

It was admitted that the land in controversy was within the ten-mile limit of the grant to the company, and that the map of location of the railroad was filed in the office of the Secretary of the Interior on the 20th of October, 1868.

It was also admitted that no claim of any right or title to or in the right of way of the Railroad Company across the lands in controversy was made by any or either of the defendants.

The defendants introduced evidence to sustain the averments of their answers.

The case was submitted to a jury on special interrogatories, and the jury found that the defendants had been in possession of the land claimed by them, either by themselves or their predecessors and grantors, from some time in 1868 to the commencement of the action. The jury also returned the following verdict: "We, the jury empanelled in the above-entitled cause, find the issues joined herein in favor of the said defendants and against the plaintiff, no cause of action."

Judgment was entered upon the verdict. It was affirmed by
the Supreme Court of the State.. The court said, after discuss-
ing questions with which we are not concerned:

"The next question for consideration is whether the statute
of limitations can prevail as a bar to the action when it appears
that the patent of the United States Government was not issued
to the plaintiff until January 20, 1900."

The question was answered in the affirmative. The chief
justice of the State granted this writ of error.

*Mr. Maxwell Evarts*, with whom *Mr. Lindsay R. Rogers* and
*Mr. T. D. Johnson* were on the brief, for plaintiff in error:

Under the authority of *Deseret Salt Co.* v. *Tarpey*, 142 U. S.
241, and *Tarpey* v. *Madsen*, 178 U. S. 215, the lower court held
that the statute of limitations ran in favor of the defendants,
as well before as after the issuance of the patent to the Rail-
road Company and unless this were true the defendants must
fail.

Under the provisions of the statutes of the Territory and
State of Utah, there must be an adverse holding of lands for
at least a period of seven years by the defendants, before its
provisions can be invoked. Comp. Laws, Utah, 1888, vol. 2,
220; Rev. Stat. Utah, 1898, 634.

This action was commenced in the year 1901, the patent of
the government was issued to the Railroad Company Janu-
ary 20, 1900. It is undoubtedly the law that the statute of
limitations has no application and cannot be invoked in favor
of a party claiming title thereunder, so long as the legal title
remains in the government. *Redfield* v. *Parks*, 132 U. S. 239;
*Gibson* v. *Chouteau*, 13 Wall. 92; *Bagnell* v. *Broderick*, 13 Pet.
436; *Lindsey* v. *Miller's Lessee*, 6 Pet. 666; *Langdon* v. *Sher-
wood*, 124 U. S. 74, 85. In *Steele* v. *Boley*, 7 Utah, 64, it was
held that the statute of limitations of Utah did not run against
a patentee of public land from the date of the final payment
for the land, but from the date of the issuance of the patent
therefor by the United States, reversing former decisions of

the Utah courts on authority of *Redfield* v. *Parks, supra.*
*Salt Co.* v. *Tarpey,* 124 U. S. 241, apparently overruled *R. R.
Co.* v. *Prescott,* 16 Wall. 603, but the latter case was reaffirmed
in *Ankeny* v. *Clark,* 148 U. S. 345, and *Wisconsin R. R. Co.* v.
*Price County,* 133 U. S. 496, does not hold that the legal title
to the land passed to the railroad company prior to a patent
from the United States.

See *Northern Pacific Ry.* v. *Townsend,* 190 U. S. 267, that
mere filing of map is inconsistent with the power in an indi-
vidual to acquire any part of the land granted until the patent
has issued. *Barden* v. *Northern Pacific R. R. Co.,* 154 U. S.
288, either overrules *Salt Co.* v. *Tarpey, supra,* or limits it to
the particular case. And see *Corrinne Co.* v. *Johnson,* 156
U. S. 574. *Langdeau* v. *Hanes,* 21 Wall. 521, has no bearing
on this case.

Section 21, act of July 2, 1864, providing for payment of
cost of surveying before the issuing of the patent has been con-
strued in *Railway Co.* v. *Prescott,* 16 Wall. 603; *Railway Co.* v.
*McShane,* 22 Wall. 444; *Northern Pacific Railroad* v. *Traill
County,* 115 U. S. 600; *Ankeny* v. *Clark,* 148 U. S. 345; and it
has invariably been held that a railroad company, notwith-
standing the fact that it has filed its map of definite location,
does not acquire a legal title to the land until it has paid the
cost of surveying, selecting and conveying the same.

There is no evidence in this case that the survey has been
paid for or that the land was ever surveyed. The cases *supra*
are not limited by *Cent. Pac. R. R. Co.* v. *Nevada,* 162 U. S. 512.

No title was acquired by simply filing its map of definite
location.

The 4th section of the act of July, 1862, provides that pat-
ents shall issue conveying the right and *title* to said land.

The right to assert adverse possession against the grantee of
the government prior to the issue of a patent was not in any-
way considered or decided in the case of *Deseret Salt Co.* v.
*Tarpey,* 142 U. S. 241.

The title (if any) acquired by the Railroad Company at the

time of filing its map of definite location was a conditional fee
and of such a character that the defendants in error could not
acquire the land by limitation, as the United States still had
an interest therein.

As to how a Federal question may be set up so as to enable
this court to take jurisdiction, see *Home for Incurables* v. *City
of New York,* 187 U. S. 155; *Parmelee* v. *Lawrence,* 11 Wall. 36;
*Dewey* v. *Des Moines,* 173 U. S. 193; *Meyer* v. *Richmond,* 172
U. S. 82.

*Mr. B. H. Jones* for defendants in error submitted:

Defendants established their defence under the statutes of
limitations proving that adverse possession for a period ex-
ceeding thirty years had operated to transfer the plaintiff in
error's title. No Federal question is presented. *Carpenter* v.
*Williams,* 9 Wall. 785; no question is raised as to the validity
or operative effect of an act of Congress, the defence being the
statute of limitations only. *McStay* v. *Friedman,* 2 Otto, 723;
*Romie* v. *Casanova,* 1 Otto, 379; *Elmendorf* v. *Taylor,* 10 Wheat.
153.

The withdrawal of all odd sections between Wyoming and
Monument taking effect in May, 1862, is evidence that the
definite location had preceded it. *Newhall* v. *Sanger,* 92 U. S.
762; *Moffatt* v. *United States,* 112 U. S. 30.

The recitals in the patent showed that the line of the railroad
from Ogden to Sacramento had been constructed and fully
completed and equipped prior to November 3, 1869.

The title to the lands in dispute vested in the Railroad Com-
pany by virtue of the Pacific Railroad grants. It is no longer
an open question that it was a grant *in presenti* and that the
title vested upon that date.

No one but the government can raise the lien question.
That a grant may be made by a law as well as a patent pursuant
to a law has been settled by the repeated decisions of this court.
*Ryan* v. *Carter,* 3 Otto, 78; *Langdeau* v. *Hanes,* 21 Wall. 521.
In 1868 the sections granted became susceptible of identifica-

tion, and the title then attached as of the date of the grant. *Salt Co.* v. *Tarpey,* 142 U. S. 241.

Ever since the definite location of this railroad ejectment suits have been brought upon the legal title to the land granted by the Pacific Railroad Acts without regarding the patent. *Corrinne Mill Canal & Stock Co.* v. *Johnson,* 156 U. S. 574; *Deseret Salt Co.* v. *Tarpey,* 142 U. S. 241; *Tarpey* v. *Madsen,* 178 U. S. 215.

As a matter of history, the only title to all the lands covered by the cities and towns and homestead and preëmption claims in Utah between Wyoming and Nevada is that which arises by virtue of the statute of limitations. *Forrester* v. *Scott,* 92 California, 398; *Jatunn* v. *Smith,* 95 California, 154; *S. P. R. R. Co.* v. *Whitaker,* 109 California, 268.

This action for the land in dispute was commenced before the issuance of a patent. The property having been held and possessed adversely to such legal title for thirty-two years before the commencement of the action. Under section 2861 Rev. Stat. Utah, 1898, the burden of proof was on the plaintiff in error. Tyler on Ejectment, 867; *Green* v. *Hawkins,* 19 How. 69.

There is no evidence in this case showing an ouster, or an entry, or seizin or possession in plaintiff or its grantors since October 20, 1868, as required by section 2859, Rev. Stat. Utah, 1898. *United States* v. *Chaves,* 159 U. S. 452; *United States* v. *Devereaux,* 90 Fed. Rep. 182.

MR. JUSTICE MCKENNA, after stating the case as above, delivered the opinion of the court.

The case is in narrow compass. The question presented is whether adverse possession under claim of right for the period prescribed by the statute of limitations of Utah before patent was issued by the United States can prevail against the latter. It has been decided by this court that adverse possession of land gives title to it and all of the remedies which attach to the

title. This was expressly ruled in *Sharon* v. *Tucker*, 144 U. S. 533. The suit was a bill in equity to establish as matter of record a title acquired by adverse possession, and it was brought against those who but for such acquisition would have been the owners. Mr. Justice Field, speaking for the court, said:

"It is now well settled that by adverse possession for the period designated by the statute, not only is the remedy of the former owner gone, but his title has passed to the occupant, so that the latter can maintain ejectment for the possession against such former owner should he intrude upon the premises. In several of the States this doctrine has become a positive rule, by their statutes of limitations declaring that uninterrupted possession for the period designated to bar an action for the recovery of land shall, of itself, constitute a complete title. *Leffingwell* v. *Warren*, 2 Black, 599; *Campbell* v. *Holt*, 115 U. S. 620, 623." See also *Shelly* v. *Guy*, 11 Wheat. 361.

Adverse possession, therefore, may be said to transfer the title as effectually as a conveyance from the owner; it may be considered as tantamount to a conveyance. And the Central Pacific Railroad Company had the title. *Salt Co.* v. *Tarpey*, 142 U. S. 241. It would seem, therefore, an irresistible conclusion that it could have been transferred by any of the means which the law provided. It is, however, contended otherwise, and *Ankeny* v. *Clark*, 148 U. S. 345; *Barden* v. *Northern Pacific R. R. Co.*, 154 U. S. 288, and *Nelson* v. *Northern Pacific Ry. Co.*, 188 U. S. 108, are urged to support the contention. A comparison of those cases with *Salt Co.* v. *Tarpey* becomes necessary.

*Salt Co.* v. *Tarpey* was an action of ejectment. Tarpey was the plaintiff in the trial court. He relied for his title upon a lease from the Central Pacific Railroad Company, and it became necessary to consider the nature of the Congressional grant to that company. The issue made was direct and unmistakable, and the decision was equally so. The plaintiff contended that the grant vested in the company the *legal title*. It was asserted on the other hand that the title to the land was

retained until the cost of selecting, surveying and conveying all the granted lands was paid, and, also, that by other provisions of the granting act the title remained in the government until patent issued. Both contentions were rejected. The court said that the terms of the grant "import the transfer of a present title, not one to be made in the future. They are that 'there be and is hereby granted' to the company every alternate section of the lands. No partial or limited interest is designated, but the lands themselves are granted, as they are described by the sections mentioned. Whatever interest the United States possessed in the lands was covered by those terms, unless they were qualified by subsequent provisions, a position to be presently considered." Those provisions were considered, and it was determined that they did not qualify the terms of the grant conveying the title or essentially limit them. Anticipating the question that if such be the import of the act, what was the necessity of patents, it was said, there were many reasons why the issue of patents would be of great service to the patentees. "While not essential to transfer the legal right the patents would be evidence that the grantee had complied with the conditions of the grant, and to that extent the grant was relieved from the possibility of forfeiture for breach of its conditions. . . . They would thus be in the grantee's hands deeds of further assurance of his title, and, therefore, a source of quiet and peace to him in its possession." And the conclusion was that the title transferred was a legal title, as distinguished from an equitable and inchoate interest. The distinction expressed the completeness of the title conveyed.

*Ankeny* v. *Clark* was an action for the recovery of the value of 12,767 bushels of wheat, which had been delivered by Clark to Ankeny in pursuance of a contract by which Ankeny agreed to sell and deliver to Clark two sections of land in Walla Walla County, in what was then the Territory of Washington. After the delivery of the wheat Clark demanded a deed for the land. Ankeny, after some delay on one pretext or another, informed Clark that he could have a warranty deed to a part of the land,

and a quitclaim deed to the part which was called railroad land, and informed him, as to the latter part, that if the Northern Pacific Railroad Company could not get title he would be obliged to procure title from the government. Ankeny promised to pay the necessary expenses of obtaining title in that way. Clark refused the offer and gave notice that, unless a good title was conveyed to him for the whole of the land within five days, he would abandon possession and claim compensation for the violation of the contract. Ankeny paid no attention to the notice, and Clark brought suit for the value of the wheat and recovered. The case came to this court from the Supreme Court of the Territory. In passing on the case this court said there were three principal matters of contention in the trial court. We are concerned with only one of them, and that is, "Did Ankeny have good title to the northeast quarter of section 19, being part and parcel of the lands which he agreed to sell to Clark?" Clark asserted the negative of the question; Ankeny contended for the affirmative, and cited *Salt Co.* v. *Tarpey.* The court did not find it necessary to decide the issue thus accurately presented. It followed *Salt Co.* v. *Tarpey,* to the effect that the government could enforce the payment of the costs and could withhold the patents until they were paid, and this, it was said, gave "the government a lien for said costs." And it was hence held that Ankeny "did not hold such a title as it was obligatory on the plaintiff (Clark) to accept." But *Salt Co.* v. *Tarpey* was not questioned. It was only decided that the land was subject to a lien and, so burdened, Clark was not compelled to receive it.

*Barden* v. *Northern Pacific R. R. Co.,* 154 U. S. 288, was an action by the Railroad Company for the recovery of certain lands containing veins or lodes of rock in place bearing gold, silver and other precious metals. The plaintiff relied for title upon its grant. The defendant contended that the lands were excepted by express words from the grant. This contention was sustained. It is manifest, therefore, that the case in no way militates with the decision in *Salt Co.* v. *Tarpey,* and the

court said so. Mr. Justice Field was the organ of the court in both cases, and he expressed the inapplicability of the *Tarpey* case and left it unimpaired. What was there said was affirmed, that the title passed at the date of the grant. Of what lands? Of those, it was held, which were not reserved as mineral. In other words, mineral lands were not conveyed, whether known or unknown to be such at the time of the grant. This was the main question decided. It was also held that the issue of patent would constitute a determination of the character of the land by reason of the power of the Land Department to determine and establish it. But it was not intimated, nor does it follow, that the conveyance of the title to the company was by the patent and not by the granting act. There was, therefore, nothing decided which detracts from *Salt Co.* v. *Tarpey.*

*Nelson* v. *Northern Pacific Railway* was an action brought by the Railway Company to recover the possession of a quarter section of land claimed to be within the land grant of the Northern Pacific Railroad, and the company held a patent. Nelson claimed to have settled upon the land three years before the definite location of the road. He claimed, therefore, to be within the exceptions of the grant. The land when he settled upon it was unsurveyed, and the effect of this constituted one of the questions in the case. Upon the filing of a map by the Railroad Company of its general route, an order was made by the Land Department withdrawing from settlement the lands within the limits of the grant. The effect of this order was another question in the case. It was held "that the Railroad Company did not acquire any *vested* interest in the land here in dispute in virtue of its map of general route or the withdrawal order based on such map," and it was further held that Nelson's settlement upon and occupancy of the land was valid, and constituted a claim upon the land within the meaning of the Northern Pacific act of 1864. In other words, it was held that the land was excluded from the grant by express words. The operative words which produced that effect were expressed in the following provision of section 3 of the act: "And wherever,

prior to said time, [of definite location] *any* of said sections or parts of sections shall have been granted, sold, reserved, *occupied by homestead settlers*, or preëmpted, or otherwise disposed of, *other lands* shall *be selected* by said *company in lieu* thereof," etc. This view was established in an elaborate opinion. The case, therefore, like *Barden* v. *Northern Pacific R. R.*, decided only that lands did not pass by the grant which were reserved from it. An evident proposition, whatever might have been the difficulties in determining what lands were reserved. And there were difficulties. This court in consequence divided in opinion. But those difficulties do not confront us in the case at bar. They are settled, and in their settlement no doubts were cast upon the efficacy of the grants to convey title to all the lands they covered—to all that were not reserved from them.

*Judgment affirmed.*

Mr. Justice Brewer concurs in the judgment.