(December 8, 1910.)

## THE NORTHERN PACIFIC RAILWAY CO., Appellant, v. E. E. PYLE et ux., Respondents.

[112 Pac. 678.]

RAILROAD LAND GRANT—LOCATION OF ROAD—TITLE TO LAND—HOMESTEAD ENTRY—CONTEST IN UNITED STATES LAND OFFICE—ADVERSE POSSESSION—PAYMENT OF TAXES—STATUTE OF LIMITATIONS—SUSPENSION OF.

(Syllabus by the court.)

1. Under the provisions of sec. 4043, Rev. Codes, title to land by adverse possession cannot be established under the provisions of the Revised Statutes unless it shall be shown that the land has been

occupied and claimed for a period of five years continuously, and the party or persons, their predecessors and grantors, have paid all taxes, state, county and municipal, which have been levied and . assessed upon said land according to law.

2. *Held,* that the evidence is sufficient to show that the respondents paid all taxes that had been assessed against the land in dispute according to law, from 1902 to 1907.

3. Under an act of Congress approved July 2, 1864, entitled "An act granting land to aid in the construction of the railroad and telegraph line from Lake Superior to Puget's Sound on the Pacific Coast, by the northern route," and the acts and joint resolutions of Congress supplemental thereto and amendatory thereof, there was granted to the Northern Pacific Railroad Co. certain lands along its right of way upon the conditions mentioned in said act. The line of said railroad company was definitely fixed opposite the land in controversy and a plat thereof filed in the office of the commissioner of the general land office on December 12, 1882. Thereafter the said railroad company complied with the terms and conditions of said acts, and said railroad and telegraph line were constructed and accepted by the President of the United States. *Held,* that said land was within the limits of said grant and became a part thereof, and under a mortgage foreclosure sale said land was sold and conveyed, with other land, to the appellant herein, the Northern Pacific Railway Co.; that said grant to the Northern Pacific Railroad Co. was *in praesenti,* and that the legal title to said land passed to said railroad company upon its filing its map of definite location and thereafter complying with the terms and conditions of said grant.

4. The delay of the government in issuing a patent to said railroad company for said land did not prevent the company from maintaining an action in ejectment to remove any person from said land and maintain its right to the possession thereof.

5. The pendency of a homestead contest in the land department of the United States does not suspend the running of the statute of limitations.

6. *Held,* that the Northern Pacific Railroad Co. was entitled to the possession of the land in dispute from December 2, 1882, up to the time that said lot was conveyed to the appellant corporation in 1896, and that said appellant corporation could have maintained an action in ejectment to remove any trespasser from said lot at any time prior to the running of said statute in favor of an adverse claim.

7. In an action in ejectment to recover land in this state, the defendant may admit title in the United States either with or without claim on his part of the right to procure title from the United States, and it is sufficient if he has such possession as is required

by our statute and claims title adversely to the plaintiff and all others except the United States.

APPEAL from the District Court of the First Judicial District, for Shoshone County.   Hon. W. W. Woods, Judge.

Action to have title quieted to certain land and to recover compensation for a railway right of way.   Judgment for defendants.   *Affirmed.*

Featherstone & Fox, for Appellant (E. J. Cannon and Cullen & Dudley, of Counsel).

The running of the statute of limitations was suspended during the pendency of the contest between the respondents and appellant in the land department of the United States. (*St. P. M. & M. Ry. Co. v. Olson,* 87 Minn. 117, 94 Am. St. 693, 91 N. W. 294; *Braun v. Sauerwein,* 10 Wall. 218, 19 L. ed. 895; *Gaines v. Thompson,* 7 Wall. 347, 19 L. ed. 62; *Johnson v. Towsley,* 13 Wall. 72, 20 L. ed. 485; *Marquez v. Frisbie,* 101 U. S. 473, 25 L. ed. 800; *Cosmos Exp. Co. v. Gray Eagle Oil Co.,* 112 Fed. 4, 7, 50 C. C. A. 79 et seq., and cases cited, 190 U. S. 301, 308, 23 Sup. Ct. 692 et seq.; *Craig v. Leitersdorfer,* 123 U. S. 189, 210, 8 Sup. Ct. 85, 31 L. ed. 114 et.seq.; *Martinson v. Marzolf,* 14 N. D. 301, 103 N. W. 937; *Matthews v. O'Brien,* 84 Minn. 505, 88 N. W. 12; *McHenry v. Nygaard,* 72 Minn. 2, 74 N. W. 1106; *Zimmerman v. McCurdy,* 15 N. D. 79, 106 N. W. 125, 12 Ann. Cas. 29; *Le Fevre v. Amonson,* 11 Ida. 45, 81 Pac. 71.)

Since the jurisdiction to determine what lands passed under the grant was vested in the interior department, equally with the jurisdiction to determine the better right to public lands as between contesting claimants, the rule of law prohibiting courts from taking jurisdiction of any cause which would infringe upon the land department's jurisdiction is as applicable to the contest between the appellant and a homestead claimant as it is to a contest between two homestead claimants.   (*Litchfield v. Register and Receiver,* 9 Wall. 575, 19 L. ed. 681; *S. C. & St. P. R. Co. v. United States,* 34

Fed. 835; *Phoenix & E. R. Co. v. Arizona E. P. Co.*, 9 Ariz.
434, 84 Pac. 1097; *Humbird v. Avery*, 110 Fed. 465, 195 U. S.
480, 502, 25 Sup. Ct. 123, 49 L. ed. 286; *Brown v. Hitchcock*,
173 U. S. 473, 19 Sup. Ct. 485, 43 L. ed. 772; *Northern Lumber Co. v. O'Brien*, 124 Fed. 819; *French v. Fyan*, 93 U. S.
169, 23 L. ed. 812; *Wright v. Roseberry*, 121 U. S. 488, 7 Sup.
Ct. 985, 30 L. ed. 1039; *Barden v. N. P. R. R. Co.*, 154 U. S.
288, 14 Sup. Ct. 1030, 38 L. ed. 992.)

It is a necessary conclusion from the foregoing premises
that the pendency of the contest between the appellant and
the respondents before the officers of the interior department
from 1902 to 1908 precluded the running of the statute of
limitations in favor of the respondents and against the appellant. (*St. P. M. & M. Co. v. Olson*, 87 Minn. 117, 94 Am. St.
693, 91 N. W. 294; *Delacey v. Commercial Trust Co.*, 51 Wash.
542, 130 Am. St. 1112, 99 Pac. 575; *Blumer v. Iowa R. Land
Co.*, 129 Iowa, 32, 113 Am. St. 444, 105 N. W. 342, 206 U. S.
482, 27 Sup. Ct. 769, 51 L. ed. 1148; *Frink v. Hoke*, 35 Or. 17,
56 Pac. 1093.)

The possession pleaded by the respondents was not adverse
within the meaning of the statute, nor sufficient to set the
statute of limitations in motion in their favor. (*Reynolds v.
Willard*, 80 Cal. 605, 22 Pac. 262; *Tuffree v. Polhemus*, 108
Cal. 670, 41 Pac. 806; *Altschul v. O'Neill*, 35 Or. 202, 57 Pac.
95, and cases cited; *Litchfield v. Sewell*, 97 Iowa, 247, 66 N.
W. 104 et seq.; *Doe v. Beck*, 108 Ala. 71, 19 So. 802; *Delacey
v. Commercial Trust Co.*, 51 Wash. 542, 130 Am. St. 1112, 99
Pac. 574; *Flewelten v. Randall*, 32 Tex. Civ. 361, 74 S. W. 49;
*Port Townsend v. Lewis*, 34 Wash. 413, 75 Pac. 982.)

C. W. Beale, Walter H. Hanson and James A. Wayne, for
Respondents.

The grant to the Northern Pacific Railroad Company to
said lot No. 10 was a grant *in praesenti,* and the legal title
thereto passed to said company on December 12, 1882, the
date of the filing of its map of definite location of its railroad.
(*New York Indians v. United States,* 170 U. S. 1, 17, 18 Sup.

Ct. 531, 42 L. ed. 927; *Iowa R. R. Co. v. Blumer,* 206 U. S. 482, 491, 27 Sup. Ct. 769, 51 L. ed. 1148; *Balderston v. Brady,* 17 Ida. 567, 107 Pac. 498.)

The Northern Pacific Railroad Company was entitled to the possession up to the time that this lot was conveyed to the appellant in 1896, and might have maintained an action of ejectment from the date of the filing of its map of definite location up to the time of the transfer in 1896 to appellant; and adverse possession could commence at the date of filing map of definite location of railroad. (*Toltec Ranch Co. v. Babcock,* 24 Utah, 183, 66 Pac. 879.)

The statute of limitation would not be suspended or tolled during the time of pendency of any contest before the interior department, and the officers of the department are without jurisdiction to hear or determine any controversy as to title of land from date of definite location of railroad, and subsequent to that time controversies concerning the land should be submitted to the courts for determination. (*Mo. Valley Land Co. v. Weise,* 208 U. S. 234, 28 Sup. Ct. 294, 52 L. ed. 466; *Sage v. Rudnick,* 91 Minn. 325, 98 N. W. 89, 100 N. W. 106; *So. Pac. R. Co. v. Whitaker,* 109 Cal. 268, 41 Pac. 1083; *Northern Pac. R. Co. v. Kranich,* 52 Fed. 911; 9 Am. & Eng. Ency. of Law, 1st ed., 58; *Edwards v. University,* 1 Dev. & B. Eq. (N. C.) 325, 30 Am. Dec. 170.)

A claim of right which is subservient to the government and hostile to all others does not rob the adverse claimant of his right under the statute of limitations. (*Blumer v. Iowa Land Co.,* 129 Iowa, 32, 113 Am. St. 444, 105 N. W. 342; *Toltec Ranch Co. v. Babcock, supra; Northern Pac. R. Co. v. Kranich, supra; Allen v. McKay,* 120 Cal. 332, 52 Pac. 828.)

SULLIVAN, C. J.—This is an appeal from the judgment of the district court adjudicating that the respondents, who are defendants, E. E. Pyle and Aletha J. Pyle, husband and wife, are the owners in fee of lot 10 in sec. 5, Tp. 45 N., Range 3 E., of Boise Meridian, and adjudging that the appellant, the Northern Pacific Railway Co., has no right, title or interest in or right of possession to said lot, and that the respond-

ents are entitled to the payment of the sum of $9,200, awarded by the commissioners to be paid by the Chicago, Milwaukee & St. Paul Railway Co. for a railway right of way over said lot.

On the 9th of March, 1908, the plaintiff in the original action, the Chicago, Milwaukee & St. Paul Railway Co. of Idaho, instituted proceedings in the district court of Shoshone county against the respondents Pyle and the Northern Pacific Railway Co. to condemn a strip of land extending across said lot 10 for a right of way for its proposed railway. Thereafter the defendants Pyle filed their answer and amended answer to said complaint. The Northern Pacific Railway Co., one of the defendants in said proceeding, refused to plead to the amended complaint, and thereafter proceedings were had which resulted in the appointment of three commissioners to assess and award the damages sustained by the defendants. For the facts in that proceeding, reference is made to the case of *E. E. Pyle et ux. v. Woods,* 18 Ida. 674, 111 Pac. 746, decided on November 26, 1910, by this court.

It appears that the Northern Pacific Railway Co. took no part in said condemnation proceedings whatever and offered no evidence as to any damages that would result to it from the Milwaukee Company's procuring such right of way, and said commissioners awarded to the said Pyles damages in the sum of $9,500, which was found they had sustained by reason of such condemnation and appropriation. Said commissioners also found that the Northern Pacific Railway Co. would not sustain any damages whatever. Thereafter on the 1st of May, 1908, on an *ex parte* application and while said Northern Pacific Co. was still in default, it secured an order from the trial court enjoining and restraining the payment of $9,200 of the $9,500 awarded as aforesaid. Repeated applications were made by the Pyles for an order of the court requiring the payment to them of said award, which the court failed to grant, and on the 14th day of February, 1910, nearly two years after said award was made, the court ordered said Northern Pacific Railway Co. to file its complaint herein, showing by what right it claimed said award that had been

made to said defendants Pyle.   Upon the order of the trial
court, the Northern Pacific Railway Co. filed its answer and
cross-complaint in which it was alleged, among other things,
that by act of Congress of the United States, approved July
12, 1864, entitled ''An Act granting lands to aid in the con-
struction of a railroad and telegraph line from Lake Superior
to Puget's Sound, on the Pacific Coast, by the northern
route,'' and the acts and joint resolutions of Congress supple-
mental thereto and amendatory thereof, there was granted to
the Northern Pacific Railroad Co. every alternate section of
public land, not mineral, designated by odd sections, to the
amount of twenty alternate sections per mile on each side of
said railroad as said company may adopt, and whenever on
the line thereof the United States has full title, not reserved,
sold, granted or otherwise appropriated and free from pre-
emption and other rights, at the time said road is definitely
fixed and the plat thereof filed in the office of the commission-
ers of the general land office; that the line of said Northern
Pacific Railroad opposite lot 10 was definitely fixed and the
plat thereof filed in the office of the commissioner of the
general land office, December 12, 1882; that thereafter the
said Northern Pacific Railroad Co. duly constructed its said
railroad and telegraph line over and along said line of definite
location, and the same having been examined by the commis-
sioners appointed by the President of the United States for
that purpose, was reported by said commissioners to have been
so constructed and completed in the manner required by said
act of Congress, and said railroad and telegraph line was
thereupon accepted by said President of the United States;
that said lot 10 is within less than forty miles of the line of
said Northern Pacific Railroad and is within the limits of said
grant; that said land is nonmineral in character, as appears
by record in the United States land office for the district in
which said land is located, and in the office of the commis-
sioner of the general land office, and petitioner avers that said
land was at the date of the grant to said Northern Pacific
Railroad Co. and at the date of the filing of the map of defin-
ite location by said railroad company in the office of the

commissioner of the general land office, public lands of the
United States, not reserved, sold, granted, occupied by home-
stead settlers or otherwise appropriated and free from pre-
emption or other claims or right; that in the year 1896, a
decree was entered by the United States circuit court for the
district of Idaho foreclosing a mortgage theretofore given by
said Northern Pacific Railroad Co. upon its said land grant
and other property, which land grant included said lot 10,
whereby said lands were sold and conveyed to this plaintiff,
the Northern Pacific Railway Co.; that the defendants Pyle in
August, 1902, made application at the United. States land
office at Coeur d'Alene, Idaho, to enter said lot 10 as public
land of the United States under the provisions of the home-
stead act of Congress and acts supplemental thereto and
amendatory thereof; that said application was rejected by the
register and receiver of said land office for the reason that the
application conflicted with the grant of the Northern Pacific
Railroad Co. (now Railway Co.); that thereafter an appeal
was taken to the commissioner of the general land office, who
sustained the decision of the register and receiver; thereafter
an appeal was taken to the secretary of the interior and he
also sustained the decision of the register and receiver; that
the Northern Pacific Co. has at all times asserted its title to
said lot and to the whole thereof, and paid taxes levied and
assessed against said lot in the years 1904, 1905, 1906 and
1907, and prays that it be adjudged and determined that it
is the owner of said land and entitled to receive whatever
compensation shall be paid for said right of way by the
Chicago, Milwaukee Co., and that it be decreed that the
defendants Pyle have not, and never have had, any right, title
or interest in or to said lot.

A demurrer to said cross-complaint having been overruled,
the defendants answered admitting some of the allegations
and denying others, and plead title by adverse possession.
Trial was had to the court without a jury and the court found
the issues in favor of the defendants Pyle. It found that the
Northern Pacific Railroad Co. became the owner of said lot
under the provisions of said act of Congress granting lands to

aid in the construction of railroads, and that the Northern Pacific Railway Co. became the owner by purchase thereof at mortgage sale; that Pyle and wife established their residence on said lot on March 11, 1902, and have resided upon and maintained their home thereon, and have been in the actual, peaceable, notorious, continuous and adverse possession of said lot and every part thereof from the 11th of March, 1902, up to the time of the commencement of this action on March 9th, 1908; that they had paid all taxes, state, county and municipal, which were levied and assessed upon and against said lot and improvements, and every part thereof; that no taxes, state, county or municipal, had been levied and assessed according to law upon said lot 10 or any part thereof to said defendants or to the Northern Pacific Railway Co.; and upon the findings thus made, judgment and decree were entered in favor of defendants, E. E. Pyle and Aletha J. Pyle, decreeing that they were entitled to the payment of said $9,200 theretofore awarded to them by said commissioners, and that the claim of the said "Northern Pacific Railway Co. to said lot 10 and to each and every part thereof and the said $9,200 and to each and every part thereof, is without right and foundation and is invalid and groundless," and quieted said title in said defendants Pyle. The appeal is from the judgment.

The principal question presented for determination is: Did the statute of limitations run in favor of respondents, who had settled upon said lot 10, under the facts as established by the evidence and under the law? In other words, did the respondents procure title to said lot 10 by adverse possession?

Under the provisions of sec. 4043, Rev. Codes, title by adverse possession cannot be established unless it be shown that the land has been occupied and claimed for a period of five years continuously and the party or person, his predecessors and grantors, has paid all taxes, state, county and municipal, which have been levied and assessed upon said land according to law. The court found that the defendants Pyle had paid all taxes that had been assessed against said property according to law. It also found that no taxes had been levied and

assessed upon said lot 10 according to law. The evidence is sufficient to support that finding.

Counsel for appellant contends that the running of the statute of limitations was suspended during the pendency of the contest between the respondents and appellant in the land. department of the United States, and cites many decisions in support of his contention. The respondents did make application to the proper United States land office to enter said land as a homestead under the laws of Congress in 1902, but the register and receiver refused to permit them to do so, on the ground that said land was within said railroad grant and belonged to the appellant company. Appeals were taken, respectively, to the commissioner of the general land office and to the secretary of the interior, where the decision of the local office was sustained, and counsel contend that the statute of limitations was tolled or ceased to run during the pendency of such proceedings before the United States land department; citing *St. Paul M. & M. Ry. Co. v. Olson*, 87 Minn. 117, 94 Am. St. 693, 91 N. W. 294, and *Braun v. Sauerwein,* 10 Wall. 218, 19 L. ed. 895, and many other decisions. In the Olson case that court held that whenever a person is prevented from exercising his legal remedy by some paramount authority, the time during which he is thus prevented is not to be counted against him in determining whether the statute of limitations has barred his right.

In *Sage v. Rudnick,* 91 Minn. 325, 98 N. W. 89, 100 N. W. 106, the court had under consideration a railroad grant, and held that the grant to the railroad company was *in praesenti,* and that the legal title to the land passed to the railroad company upon its filing its map of definite location, and that the statute of limitations began to run in favor of defendant's alleged title by adverse possession at the time of his settlement upon the land, the legal title thereto being in the railroad company. While in that decision the supreme court of Minnesota does not in express terms overrule the Olson case, it clearly does so in effect.

In *Deseret Salt Co. v. Tarpey,* 142 U. S. 241, 12 Sup. Ct. 158, 35 L. ed. 999, and in *Toltec Ranch Co. v. Cook,* 191 U. S.

532, 24 Sup. Ct. 166, 48 L. ed. 291, it was held that the grant to the railroad company was a grant *in praesenti,* and that the legal title passed at the date of the definite location of the company's line of railroad; that the railroad company could maintain an action for the possession of its land before the issuance of patent, and in the latter case it was held that the conveyance of title was by the granting act rather than by patent, and that the title thus transferred was a legal title as distinguished from an equitable interest, and the title acquired by adverse possession would prevail against a patent.

*Barden v. Northern Pac. Ry. Co.,* 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. ed. 992, which is cited by counsel for appellant, we do not think supports their contention. In the course of the opinion in that case Justice Field said:

"The delay of the government in issuing a patent to the plaintiff, of which great complaint is made, does not affect the power of the company, to assert in the meantime, by possessory action (as held in *Deseret Salt Co. v. Tarpey,* 142 U. S. 241, 12 Sup. Ct. 158, 35 L. ed. 999) its right to lands which are in fact nonmineral."

In *Toltec Ranch Co. v. Cook, supra,* the court said:

"The case, therefore, like *Barden v. Northern Pacific R. R. Co.,* decided only that lands did not pass by the grant which were reserved from it. An evident proposition, whatever might have been the difficulties in determining what lands were reserved. And there were difficulties. This court in consequence divided in opinion. But those difficulties do not confront us in the case at bar. They are settled, and in their settlement no doubts were cast upon the efficacy of the grants to convey title to all the lands they covered—to all that was not reserved from them."

In the case at bar there is no question about the character of the land, as both parties admit that it was not exempt from the grant to the railroad company but was included within it.

The case of *Iowa R. R. Land Co. v. Blumer,* 206 U. S. 482, 27 Sup. Ct. 769, 51 L. ed. 1148, is cited by counsel for appellant in support of the contention that the pendency of a contest in the interior department precludes the running of

the statute, but as we read it, it is against that contention. The court said:

"Under the decisions made by this court in *Deseret Salt Co. v. Tarpey*, 142 U. S. 241, 12 Sup. Ct. 158, 35 L. ed. 999, and *Toltec Ranch Co. v. Cook*, 191 U. S. 532, 24 Sup. Ct. 166, 48 L. ed. 291, notwithstanding the patent had not been issued, the railway company, grantor of the plaintiff in error, having succeeded to the right and title of the original company, and complied with all the terms and conditions of the grant, as required in the legislation of Congress and the acts of the Iowa legislature after the acceptance of the grant by the state, was in a position and clothed with the requisite title in order to transmit the same to another who might have recovered possession of the lands, and it could itself have brought an action in ejectment to oust one holding adverse possession thereof, and, being clothed with these rights, was in such position that the statute of limitations would run against it in favor of one who occupied the premises by adverse possession under color of title. This was distinctly decided in the Toltec Ranch Company case, wherein it was held that the statute of limitations would run against the railroad company, thus situated toward the lands, although the patent had not issued. . . . . But when the grant is *in praesenti*, and nothing remains to be done for the administration of the grant in the land department, and the conditions of the grant have been complied with and the grant fully earned, as in this case, notwithstanding the want of final certification and the issue of the patent, the railroad company had such title as would enable it to maintain ejectment against one wrongfully on the lands, and title by prescription would run against it in favor of one in adverse possession under color of title. (*Deseret Salt Co. v. Tarpey* and *Toltec Ranch Co. v. Cook, supra.*)

"Applying and giving weight to the decisions thus recently rendered in this court, we think the debatable proposition in the case concerns not the title of the railway company, or its right to have maintained an action to recover the premises, but involves the right of Carraher, and the defendant in error

as his successor, to claim the title to the premises by adverse possession."

That the grant to the Northern Pacific R. R. Co. to lot 10 was a grant *in praesenti,* we have no doubt. (*N. Y. Indians v. United States,* 170 U. S. 1, 18 Sup. Ct. 531, 42 L. ed. 927; *Iowa R. R. Land Co. v. Blumer,* 206 U. S. 482, 27 Sup. Ct. 769, 51 L. ed. 1148.)

This court said in *Balderston v. Brady,* 17 Ida. 567, 107 Pac. 493, that "It has been the uniform holding of the supreme court of the United States that such grants are grants *in praesenti,* and immediately vest title in the grantee."

Under the facts of this case, the Northern Pacific Railroad Co. was entitled to the possession of said lot 10 from December 12, 1882, up to the time that said lot was conveyed to the appellant in 1896, and that company might have maintained an action in ejectment from the date of filing its map of definite location, to wit, Dec. 12, 1882, up to the time of transfer in 1896 to the present appellant, and this appellant from that date up to a time within five years subsequent to the initiation of adverse possession by the respondents, which was on the 11th day of March, 1902.

In *Toltec Ranch Co. v. Babcock,* 24 Utah, 183, 66 Pac. 876, the court said:

"The railroad company having had, as we have seen, the legal title to the land in dispute at least from time of filing of the map of definite location with the secretary of the interior, and having had the right to enter upon, occupy, and use the land, there would seem to be neither reason nor authority to hold that the statute of limitations did not run against the company and its grantee as well before as after the issuance of the patent, and this even though the intervenor may have supposed that her title was subordinate to that of the United States; for possession held in subordination to the title of the government may be adverse as to another claimant. (*Francoeur v. Newhouse,* 14 Saw. 600, 43 Fed. 236; 9 Am. & Eng. Enc. Law, 58; *Hayes v. Martin,* 45 Cal. 559.)"

The precise question under consideration was before the supreme court of the United States in *Mo. Valley Land Co. v.*

*Wiese,* 208 U. S. 234, 28 Sup. Ct. 294, 52 L. ed. 466, which case went from the supreme court of the state of Nebraska. In the course of the opinion the court said:

"The plaintiff, by his reply, in substance alleged that the grants were *in praesenti,* and that the effect of the completion of the railroads and compliance with all the terms and conditions of the act prior to January 1, 1870, operated to pass the title of the government on or prior to that date, and that the general land office had not thereafter jurisdiction in respect to such lands, and that the adverse possession of the plaintiff was not affected by the proceedings had in the land department concerning such land. . . . . We are clearly of opinion that the possession of Japp and his grantee was adverse in the strictest sense of the term, and the acts of Wiese in seeking to acquire title from the United States under the act of 1887, with the view of removing a cloud upon his title, was not an act of recognition or acknowledgment of a superior title, either in the United States or in the Sioux City Company, operating to interrupt the continuity of his adverse possession."

In *Sage v. Rudnick,* 91 Minn. 325, 100 N. W. 106, the court said: "Patent was not, however, issued to the railroad company until 1884, but it was held that the statute of limitations began to run against the company and in favor of the adverse claimant, not from the date of the issue of the patent, but from the date of the grant by Congress. . . . . The authorities all hold, and it is thoroughly settled, that, when land has passed from the general government, controversies between individuals concerning title thereto are exclusively within the jurisdiction of the courts."

In *Southern Pacific R. R. Co. v. Whitaker,* 109 Cal. 268, 41 Pac. 1083, it was held that the commencement of a contest in the United States land department did not stop the running of the statute of limitations of the state.

In *Northern Pac. R. Co. v. Kranich,* 52 Fed. 911, the court held in an action in ejectment to recover land situated in Montana that an admission in the answer that the title was in the United States is not inconsistent with the plea of the statute

of limitations, for possession held in subordination to the title of the United States may be adverse to all others. After stating the general rule applicable to obtaining title by adverse possession, to the effect that the person so claiming must claim title as against all others, the court said:

"The fact that he admits that another is owner, or does not claim title against all others, would generally be insufficient. There is no doubt that in the answer defendant admits ownership of the property in the United States. Is there any exception as to the general rule I have stated? I think in all of the western states there is an exception thereto. If a party claims title to land here against all persons but the United States, that is sufficient. This view is recognized in the cases of *Francoeur v. Newhouse,* 43 Fed. 236; *Hayes v. Martin,* 45 Cal. 563; *McManus v. O'Sullivan,* 48 Cal. 15.

"In this state I am satisfied the rule is well established not to allow, as a plea of title in a third party, a plea of title in the United States. For many years no one in Montana held title to real property against the United States. The admission, then, that the title to the property was in the United States was not at all inconsistent with the plea of the statute of limitations by defendant as against plaintiff, and the two defenses are not inconsistent."

In *Allen v. McKay,* 120 Cal. 332, 52 Pac. 828, it was held that it was not requisite that the party who relies on the statute of limitations to show that he claims title in hostility to the United States; that he may admit title in the United States either with or without claim on his part of the right to claim title from the United States, and it is sufficient if he has such possession as is required by the statute and claims in hostility to the title which the plaintiff tries to establish in the action. We think that the correct rule in this class of cases. This doctrine is supported by the supreme court of the United States and by many of the courts of last resort of other states.

We therefore conclude that the statute of limitations was not suspended or tolled from the time that the Pyles made application to homestead said lot 10 until the final decision in

the matter by the secretary of the interior; that the Northern Pacific Railway Co. was the absolute owner of said lot at the time the Pyles settled thereon in 1902, and that they held and possessed the land adversely to the railroad company, and that the statute of limitations began to run from the date of their settlement and adverse possession, and that the railway company had the right to bring an action in ejectment against them at any time within five years after their settlement thereon and possession thereof; that the Pyles have obtained title to said lot by adverse possession.

Other errors are assigned which we have examined, and we are unable to find any reversible error in the record.

The judgment is therefore affirmed, with costs in favor of the respondents.

Ailshie, J., concurs.