## W. J. HURLEY v. M. S. LOCKETT ET AL.

### No. 6135.

**1. Declarations of Tenant in Possession.**—Where title in land is asserted under the statute of ten years limitation the declarations explaining the limits of possession of one in actual possession and not holding under the party claiming by limitation are competent; otherwise if such tenant hold under such party, i. e., a tenant in possession can not by declarations and admissions injure his landlord's title.

**2. Declarations of Husband Affecting the Wife's Property.**—While the admissions and declarations of the husband can not divest his wife's property, still when the wife asserts title to property through and under the acts of her husband, then his declarations in the matter are competent against the wife.

**3. Land Acquired by Limitation During Coverture is Community.**—Lands to which title is acquired by limitation during coverture are community property.

**4. Declarations of Parties in Possession.**—Plaintiff in proving title under the ten years limitations proved the possession of one Nelson, under whose estate she claimed and took possession; the declarations of Nelson were competent while in possession that he held under the defendant.

**5. Limitations—Charge.**—Where there is evidence tending to show that possession of land claimed by limitation was held by the vendor of the party so claiming, by the consent of the defendant, the court should instruct the jury that the possession so held by consent should be excluded from their computation of the term of adverse possession. A refusal of such instructions was error.

**6. Declarations of Husband—Charge.**—Where the wife asserts title to land under the acts of her husband, as if the purchase was negotiated and made by him, or if their joint possession is claimed to have matured title by limitation, then the jury should have been charged that the wife would be bound by his admissions touching the possession of the land. A refusal was error.

APPEAL from Johnson.  Tried below before Hon. J. M. Hall.

This is an appeal from a judgment based upon a title acquired by the ten years statute of limitations.  Suit was filed June 21, 1883.

The plaintiffs, who are appellees, to make out the ten years adverse possession sought to tack their possession to that of their vendor.  It is shown that in 1863 Samuel Nelson planted a hedge upon what he considered the west line of his land.  Possession was held by Nelson up to the hedge until his death in 1871, and subsequently by Banks, his administrator. At administrator's sale by Banks the plaintiff Solomon Lockett, acting for his wife (the plaintiff M. S. Lockett), bought the land, paying therefor with the separate money of said M. S. Lockett.

After the purchase, which was in 1875 or 1876, Solomon Lockett, for his wife, held possession, leasing the land to tenants and collecting rents, etc.  There was testimony to a dispute as to the locality of the dividing line between the Campbell and the Sessions surveys, and to a claim by defendant to a line about twenty varas east of the hedge.  Testimony was offered to show Nelson's acquiescence in the location of the line by a surveyor, and that his possession was not adverse to the title asserted by the defendant.

The contention is about the strip of twenty varas width east of the hedge planted by Nelson in 1863.

The other facts appear in the opinion.

*Poindexter & Padelford,* for appellant. — 1.   The evidence of the holding of the land during one year by parties not in privity with plaintiff would at least sever the possession, and thus defeat plaintiff's title under it.   Harnage v. Berry, 43 Texas, 567; Wood on Lim., secs. 271, 583; Greenl. on Ev., 14 ed., vol. 1, 147–8, sec. 109; Whart. on Ev., vol. 2, p. 308–9, sec. 1156; Abeel et al. v. Van Gelder et al., 36 N. Y., 513; Dodge v. Freedman's Saving Bank, 93 U. S., 379; Armstrong v. Ristean, 59 Am. Dec., 126.

2.   The acts and declarations through which the title was asserted were admissible against the wife.   Lathum v. Pledger, 11 Texas, 439; Abbott's Tr. Ev., 166; Greenl. on Ev., 14 ed., sec. 113; Whart. on Ev., vol. 2, 331, sec. 1177; Story on Agency, secs. 133 and 139.

3.   The declarations of Nelson under whom plaintiff claimed were competent.   Roberts v. Yarboro, 41 Texas, 451; Howe v. Merrick, 11 Gray (Mass.), 129; Brown v. Lewis, 9 R. I., 479; Ballon v. Tilton, 52 N. H., 607; Graham v. Howell, 50 Ga., 203; Crawford v. Robie, 42 N. H., 162.

4.   The charge asked by appellant as to the effect of Nelson's possession by consent of appellants should have been given.   Carter v. La Grange, 60 Texas, 637; Satterwhite v. Rosser, 61 Texas, 171; Wood on Lim., 578, sec. 270, subdiv. 3; Downer v. Ford, 16 Cal., 346 *et seq.;* Barney v. Seeley, 38 Wis., 389, 390; Lovell v. Frost, 44 Cal., 474.

5.   Charge upon the declarations, etc., in evidence by the husband was improperly refused.   Reid v. Allen, 63 Texas, 157, 158; Abbot's Tr. Ev., 166.

*James A. Brown* and *Crane & Ramsey,* for appellee. — 1.   Declarations, acts, or admissions of the husband fixing boundary lines, granting easement, and lessening amounts, or otherwise impairing the right or title to the wife's separate property, are inadmissible and insufficient to bind the wife or affect her rights without her ratification, acquiesence in, or approval thereof, either express or implied, or without showing authority to bind her.   T. & P. R. R. v. Durrett, 57 Texas, 48; G. C. & S. F. Ry. Co. v. Donaho, 59 Texas, 128.

2.   The testimony of appellant as to transactions and conversations with Samuel Nelson, he being deceased, was inadmissible and was properly excluded.   Rev. Stats., art. 2248; Stringfellow v. Montgomery, 57 Texas, 349.

3.   The occupancy of the land in controversy by Samuel Nelson up to the time of his death, 1870 or 1871, and the continuous adverse holding

thereof by his administrator and appellees from 1872 to 1883, with no knowledge of appellant's pretended claim thereto, presents an insuperable bar to appellant's claim in this case. McDonald v. McGuire, 8 Texas, 361; Gillespie v. Jones, 26 Texas, 343; Whitehead v. Foley, 28 Texas, 1.

4. The court correctly charged the jury that the admissions and statements of Solomon Lockett as to the rights and interest of the wife as to her separate property would not be sufficient to prejudice or defeat any rights of the wife, made without her knowledge or consent, or unless such admissions are subsequently ratified by her. G. C. & S. F. Ry. Co. v Donaho, 59 Texas, 128; T. & P. Ry. Co. v. Durrett, 57 Texas, 48.

HOBBY, JUDGE.—This suit was brought to recover about two acres of land situated along and contiguous to the eastern boundary line of the R. Campbell survey and the western boundary line of the I. B. Sessions survey, these lines being coincident, the latter survey being junior to and calling for the former. The land in controversy is the lower or southern portion of a narrow strip of land situated as above described.

The suit was instituted on the 21st day of June, 1883, by Mrs. M. S. Lockett, joined by her husband Solomon Lockett, against W. J. Hurley. The petition alleges ownership in Mrs. Lockett in fee simple on and prior to June 4, 1883, and sets forth specially that plaintiffs and those under whom they claim have had ten years prior to said date continuous adverse, etc., possession, cultivating, using, and enjoying the same up to the western boundary line of the Sessions survey, which is alleged to be marked on the ground for a distance of about 800 varas by a bois d'arc hedge and fence.

As the case was developed on the trial the issues between the appellant and appellees were whether the hedge and fence as claimed by appellees constituted the eastern boundary line of the Campbell survey, or was it as contended by appellant located upon the ground east of said hedge and fence. If said hedge and fence marked the true east line of the Campbell survey then was appellees' specially asserted title of ten years adverse possession established.

Upon the issues thus made the court instructed the jury:

"If under the evidence and instructions given you find that the east boundary line of the Campbell survey as originally located on the ground is east of the line upon which the bois d'arc hedge and fence is shown by the evidence to have stood, then you will find for the defendant and by your verdict say, 'We the jury find that the east line of the R. E. Campbell survey as originally established on the ground is —— varas (naming the number of varas if any) east of the line marked by the bois d'arc hedge and fence, and therefore find for the defendant,' unless you find for plaintiffs under the plea of the statute of limitation and under the plea of acquiescence, as hereafter instructed. But if you find that the

east boundary line of the Campbell survey is on a line where the hedge and fence are shown by the evidence to be or west of said hedge and fence as the same stand upon the ground, you will find for plaintiff and say by your verdict, 'We the jury find that the east boundary line of the R. E. Campbell survey as originally established on the ground is on the line—or west of the line—as marked by the bois d'arc hedge and fence, and therefore find for plaintiffs.' "

The form of verdict was given the jury in the event it was found that defendant had acquiesced in the hedge and fence line. If plaintiffs were entitled to recover under the plea of ten years limitation the form of the verdict was also given to the jury. The response of the jury to the foregoing instructions was, "We the jury find for the plaintiffs under the statute of ten years limitation, with twelve dollars as rental value of the land."

There was abundant evidence we think to justify the implication contained in the verdict as to the location of the east boundary line of the Campbell survey originally east of the hedge and fence line. And it remains then to determine only whether on the trial of this cause as it is presented to us by the assignments of error the plaintiffs established their right to the land by adverse possession, in accordance with the familiar principles governing the assertion of title under that plea as settled in well adjudged cases.

The assignments of error relate to the action of the court in excluding testimony and to instructions given and refused. In support of appellees' plea of title by ten years limitation the plaintiff Solomon Lockett testified that "from the year 1876 up to 1883 plaintiff M. S. Lockett was by agents and tenants in actual adverse possession of all the land in dispute, claiming the same as her own, and cultivated, used, and enjoyed the same, to the exclusion of defendant and every one else, and her right to do so was never questioned or disputed until about June 4, 1883."

The defendant, for the purpose of showing that the plaintiffs had not held adverse, hostile, and continuous possession of the land in controversy for a period of ten years prior to the said fourth day of June, 1883, and that the east boundary line of the Campbell survey was where defendant claimed the same to be, offered to prove on the trial by the witnesses H. T. Wilkinson and W. J. Hurley that during the year 1878 Reuben and Chas. Lockett resided on and cultivated said Nelson place, and that they claimed that at that time they were the owners of said place; that they did not hold same as tenants of plaintiffs, but in their own right; that during said year the said Chas. and Reuben Lockett claimed that the western boundary line of the said Nelson tract was about twenty varas east of the old hedge—that is, that they claimed that the line claimed by defendant was the true division line between the Campbell and Sessions surveys—and that they did not during said year hold

the strip of land in controversy adversely to defendant; all of which testimony was objected to by plaintiffs because the same was irrelevant and plaintiffs could not be bound by the statements of said Reuben and Chas. Lockett; which objections of plaintiffs the court sustained and all of the above testimony was rejected and neither of said witnesses were permitted to testify to any of the above facts, to which action and ruling of the court appellant excepted and assigns the same as error.

The evidence was excluded, it appears from the record, upon the ground that "title to realty could not be established by verbal declarations of one not a party to the suit." And the further explanation is made that "the undisputed evidence was that the parties were tenants of M. S. Lockett."

We find no evidence in the record that these parties whose declarations were sought to be used by defendant were the tenants of M. S. Lockett. The general statement we have quoted from the testimony of plaintiff Solomon Lockett to the effect that M. S. Lockett had been in adverse possession by "agents and tenants" since 1876 is the only evidence upon this subject. There was no lease, contract, or agreement of any character showing or tending to show the relation of landlord and tenant between plaintiffs and Chas. and Reuben Lockett. They were not shown to have been in possession in 1878, or at any time, under even a verbal rental contract with plaintiffs.

There being no evidence in the record that Charles and Reuben Lockett occupied the land as tenants of Mrs. Lockett, we think their declarations made while in possession of the land were admissible. If, however, it should appear that they were tenants of Mrs. Lockett at that time, their declarations should be excluded.

During the trial of the cause Solomon Lockett testified in behalf of himself and his wife that "he had never at any time acknowledged that the land in controversy belonged to the defendant; that the defendant had acquiesced in the division line as claimed by plaintiffs for the past fifteen years; that he had not offered in 1880 to buy the same from defendant, and had not stated that it was not worth much to the latter, but was of value to him." He also testified that "the land in dispute and which the defendant fenced embraced about three-fourths of an acre, which plaintiffs and those under whom they claim title had been in possession of, actually enclosed, since about 1862 or 1863. That he was the plaintiff M. S. Lockett's authorized agent, attending to renting out the place for her each year and the collection of the rent, and that she occupied and cultivated the land by tenants every year since she bought it."

For the purpose of contradicting this evidence of Lockett the defendant offered to prove by his own testimony and that of Mat Hale that the plaintiff and witness Lockett several times during the year 1877 while attending to the Lockett or Nelson farm as agent for his wife M. S. Lock-

ett stated and admitted that the land involved in this suit was the property of the defendant; that he did not claim the same for his co-plaintiff; that he recognized the line claimed by defendant as the true line, and asserted no adverse claim to it. This evidence was objected to by plaintiffs and excluded by the court "because the property being the separate property of Mrs. M. S. Lockett she can not be bound by the admissions and declarations of her husband." That the admissions or declarations of the husband with respect to the separate estate of the wife and prejudicial to her interests therein are not admissible as against her, is a rule the correctness of which can not be doubted. McKay v. Treadwell, 8 Texas, 177. But when he acts as her agent, under authority express or implied, his declarations made within the scope of his agency would be. So, too, where she claims under or by virtue of the acts and declarations of the husband they would be admissible against her, not as to her separate property, but as to the property she seeks to acquire by virtue of his acts.

We do not understand, however, that the rule that the wife is not bound by the declarations or admissions of the husband as to her separate property, when they are prejudicial to her, has any application to this case.

The title to the land is specially pleaded by the plaintiffs to be one acquired by an adverse possession of ten years. A recovery was had by plaintiffs upon this theory. Consequently the land could not have been the separate estate of the wife. Whatever right or title she acquired to the land under the statute of limitation was necessarily in common with the husband. Her possession in whole or in part for the period of ten years was that of her husband, and his possession was hers; and his acts, declarations, and conduct in relation to it were admissible. It is true that the defendant and other witnesses testified that Lockett, in 1880, offered to buy the land in controversy from defendant. But we have not been able to find in the record that the facts sought to be proved by the witness Hale and W. J. Hurley, the defendant, were testified to by the latter, as is stated in the explanation of the ruling contained in the bill of exception. The time referred to in the excluded testimony was during the year 1877. That mentioned by the witnesses testifying to Solomon Lockett's offer to buy the strip of land and his acquiescence in the correctness of defendant's line, was in 1880.

To show a recognition by the defendant Hurley of the hedge and fence line as claimed by the plaintiffs, and that he was estopped from denying it to be the true line, a witness, D. C. McCain, testified in behalf of plaintiffs that "during the year 1869 he (McCain) had purchased from defendant Hurley 150 acres of the Campbell survey; that defendant executed a deed to him in 1870 for the same; that a surveyor, Quim, surveyed the 150 acre tract, and in making this survey a point in the old

hedge was recognized by defendant as the beginning corner of the tract sold to McCain, and as marking the true eastern line of the Campbell survey. That the deed executed to McCain by defendant calls for a stake in the east line of said Campbell survey as its beginning point, and calls also for the west line of the Sessions survey, and running for the closing call up and along the line of the hedge."

To explain and rebut this evidence the defendant offered to prove by himself that the reason for placing a stake in the edge of the hedge as the southeast corner of the tract he had conveyed to McCain, instead of establishing it east of said hedge, was because the east line of the Campbell and the west line of the Sessions or Nelson tract was not then settled; that he, defendant, had agreed with Nelson, the then owner of the Sessions survey, that they would have the Campbell and Sessions surveys run out and the division line between them settled and fixed, and that if the true line was ascertained to be east of said hedge he would let Nelson have the strip east of said hedge; that in consequence of this agreement to let Nelson have said strip of land, if found to be east of said hedge, he placed the eastern line of the tract conveyed to McCain on said hedge." To all of this testimony the plaintiff objected, "because Nelson was shown to be dead, and that plaintiffs are shown to be claiming title by purchase from the administrator of Nelson."

In this connection it will be proper to consider the exceptions to the exclusion of other evidence upon similar grounds. The defendant offered to introduce his own evidence to the effect that "in the year 1870 Nelson and he had procured a surveyor, Hamp Richards, and one Barnett, to establish the division line between the Campbell and Sessions surveys; that said Richards ran and established said line about twenty varas east of the hedge; that this line was then adopted by Nelson and defendant as the true division line between these surveys, and that Nelson admitted the land in controversy to be the defendant's land; and that said Nelson never after the survey made by Richards in 1870 disputed defendant's title to the land, nor did he after that survey claim the same adversely to defendant, but always after that time regarded and considered the line so established as the true division line between them. That Nelson desired to purchase the strip of land, which defendant would not sell, but agreed to let Nelson use it and cultivate it free until defendant was ready to move his fence. That Nelson so used it with this understanding until his death."

All of this evidence offered by the defendant was objected to and excluded upon the ground above stated.

Neither the administrator nor heirs of Nelson were parties to this suit. The right given by the law to a party to a suit to testify is general and it should not be abridged unless he is brought within the exception which operates to curtail this privilege. Ballon v. Tilton, 52 N. H., 607. In

this case the plaintiffs seek to acquire title under the acts, conduct, possession, and assertion of ownership of Nelson, which tacked to the occupancy and combined with acts of plaintiffs completes their title. The testimony of Banks, Nelson's administrator, in behalf of plantiffs as to the conduct and claim of Nelson to this land, that he had held adverse, open, and peaceable possession of it and had planted the hedge along the western line of the Session's survey, is replete with details as to Nelson's acts. If Nelson had testified in person upon the trial it is not probable that his testimony upon this phase of the case would have been more specific; and to exclude the evidence above referred to we think would defeat one object of the law, which is to put the parties where it applies on an equal footing, by allowing the plaintiffs the advantage of the acts and conduct of Nelson as testified to by his administrator Banks, and deprive the defendant of his evidence with reference to them. We think there was error in excluding the evidence.

Errors contained in the charge of the court are made the basis of several assignments.

To authorize a recovery and complete the ten years possession it was necessary that the occupancy of Nelson and Banks should be tacked to plaintiffs'. Hale, a witness, testified that "he had resided on the Campbell survey and had known the land in controversy for thirty-five years. In 1859 or 1860 Nelson purchased 100 acres of the Sessions survey from David Smith, the land, however, not being then surveyed. The dividing line between the Campbell and the Sessions surveys was not then definitely known. Nelson went upon the land, which he supposed he had purchased from Smith, built some houses and set out a hedge. About the time Smith entered the army in 1863 the land was surveyed by Quim to obtain the field notes for insertion in the deed to be executed by Smith to Nelson. After the survey Quim stated to the witness Hale, and Smith and Nelson, that Nelson had got his fence and hedge over and west of his line. That he (Quim) tried to save Nelson's house; 'sprung his compass for that purpose, but did not quite do it.' After this there was some uncertainty among the owners of various tracts on the Campbell survey as to its east boundary line. It was agreed among them to settle this line. The parties interested in and making this agreement were the witness, defendant Hurley, Wilkinson, Nelson, and probably others. They procured a surveyor, Hamp Richards, to establish by a survey this line in 1870. All of the parties named went upon the ground and assisted Richards in making the survey. We began at a corner of the Campbell survey, about which there has never been any dispute, and ran all the lines, establishing the east line of the Campbell about twenty varas east of the hedge and as it was fixed by subsequent surveys of Wade and Barnett." This witness testified also that "on the same day of the survey and just after it, and after the parties had agreed that this was the true line," he

heard "Nelson offer to buy the land in controversy from defendant, which the defendant declined, but told Nelson he would leave him an outlet when he moved his fence." H. T. Wilkinson testified that Nelson had never during his lifetime claimed the line marked by the hedge, but always recognized it as twenty varas east of that point. Several other witnesses testified to the fact that the line had been so recognized as claimed by the defendant.

In this connection the defendant requested the following charges, which were refused:

"You are instructed that the plaintiffs in order to recover from the defendant under the ten years statute of limitations must show by a preponderance of the evidence that the plaintiff and those under whom she claims have had and held for the full period of ten years before the —— day of ——, 1883, not only actual possession, but also visible, continuous, notorious, and hostile possession of the strip of land in controversy, against the defendant, and possession of such a character as to indicate unmistakably an assertion on their part of a claim of exclusive ownership in them as against the defendant Hurley, and unless you so find from the evidence you are instructed to find in favor of defendant.

"You are further instructed in this case that if you find from the evidence that Nelson held possession of and used the land in controversy by the consent or permission of the defendant Hurley, or if the said Nelson admitted to said Hurley during the time that he (Nelson) was in possession of said land that he (Hurley) was the owner of said land, and did not revoke said admission, in either event the possession of said Nelson would not be adverse to said Hurley; and if you find from the evidence that the said. Banks was appointed administrator of the estate of said Nelson, and that he received his possession of the land in controversy by and through his right as such administrator, then the said Banks would hold just as the said Nelson would have been compelled to hold; and if you find from the evidence that said Nelson held the land in controversy by the permission and consent of the said W. J. Hurley, then you must find that the said administrator Banks held the said land by the consent and permission of the defendant, unless the evidence in this case shows that the said Nelson before his death, or the said Banks after the death of said Nelson, by acts or words of no uncertain character, repudiated the right of the defendant Hurley and claimed said land adversely thereto.

"You are further instructed that if under the above instructions you find from the evidence that said Nelson and Banks held the land in controversy by the permission and consent of the defendant, and that during the time that they so held same (if you so find) neither of said parties repudiated the right of said Hurley to hold same as explained above, then you are instructed that you can not compute the time during which said parties so held said land in favor of plaintiff under the claim of ten

years statute of limitations, and you are instructed to find for defendant."

The charge of the court contained the statutory definitions of peaceable and adverse possession. Instructing the jury as to the law applicable to the evidence recited above, the charge in general terms is as follows:

"But if one person has peaceable possession of an estate and holds the same by the will of the owner, either expressly or by the tacit consent of the owner, and does not claim the same adversely, as hereinbefore explained, then those who hold his estate can not claim the estate by reason of such former peaceable possession, but they must show that their possession is peaceable, adverse, continuous, and uninterrupted, and used and appropriated, as hereinbefore explained, for more than ten years, as before explained; and when the same is so shown by the evidence then the law of limitations will secure to one showing such possession a title to the land against the owner and the rest of mankind."

We think the charge requested or similar instructions should in view of the evidence in the case have been given. Wood on Lim., p. 578; Satterwhite v. Rosser, 61 Texas, 171; Carter v. Town of La Grange, 60 Texas, 638.

The court instructed the jury that the "mere admissions of the husband as to the right or interest of the wife's separate property will not be sufficient to prejudice or defeat any rights of the wife, unless such admissions are made by authority or consent of the wife, or unless the same are acquiesced in by the wife after the same has come to her knowledge; and in this case, if you find that the husband of the plaintiff M. S. Lockett made any admission to the extent of her right or claim to the boundary lines of her land, then you are instructed that you will not consider such admissions if any as evidence against her unless you further find that she authorized, consented to, or knowingly acquiesced in such if any admissions; but if you find that the husband Solomon Lockett did make any admission or agreement affecting the right or interest of M. S. Lockett's claim to the land described in the petition, and that the same was done with her authority or consent, or was after same was known to her acquiesced in by her, then you may regard such admissions or agreement if any as evidence in the case, and you may give to the same such weight as you may think under all the evidence in the case the same if any is entitled to."

The charge requested by the defendant in this connection was to the effect that if it was found that "Solomon Lockett acted as the agent and for his wife M. S. Lockett in the purchase of the Nelson tract of land, and took possession thereof under the authority of Mrs. Lockett and held it as her agent, she would be bound by his agreement and admissions made within the scope of such agency." And that "if it was

found from the evidence that Solomon Lockett was the agent of M. S. Lockett as stated above, and that she claims the land in controversy under the ten years statute of limitations, acquired in part by virtue of the possession of the said Solomon Lockett as such agent, and if you find from the evidence that said Solomon Lockett during the time that he was in possession of said land as such agent and while acting as such agent admitted that the defendant was the owner of the land in controversy, you are instructed that the plaintiff Mrs. M. S. Lockett is bound by such admissions so made, and if you so find you are instructed to find in favor of the defendant."

As we have said, the admissions of the husband in respect to the separate property of the wife can not defeat or prejudice her right or title thereto. Nor are they admissible as to the extent of the boundary lines of the wife's land to her prejudice. But in this case the title of the plaintiff M. S. Lockett to the land could be derived from the deed of Nelson's administrator Banks only in the event that the hedge and fence mark the true east line of the Campbell and the western line of the Nelson or Sessions survey. It was shown upon the trial that this was not the ground upon which she was entitled to recover; but the title upon which the recovery was had was under the statute of ten years limitation, acquired in part by the possession and occupancy of Nelson, her own, and that of her husband.

The case standing thus, we do not think it was necessary, in order to affect her title by limitation, that the plaintiff Mrs. M. S. Lockett should have authorized the admissions of her husband, nor that she should have acquiesced in them. If the title to this land was acquired as set forth in the petition and as ascertained by the verdict, it was not her separate property. And the possession of M. S. Lockett being the possession of her husband, his declarations and acts were admissible. And the charge requested presenting this view of the law should have been given, or instructions embodying this principle.

For the errors mentioned in the opinion we think the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted December 11, 1888.