WICHITA VALLEY RY. CO. v. SOMERVILLE et al. (No. 808.)

(Court of Civil Appeals of Texas. Amarillo.
Oct. 16, 1915. On Motion for Rehearing, Nov. 6, 1915.)

1. WILLS ⚷⟶792—ELECTION—QUESTIONS FOR
JURY.
A husband at the time of his death owned
two lots with a hotel thereon, constituting community
property, on which he and his wife had
been living. His will gave the property to a
son, subject to the payment of rent to the
widow for life, and also gave the widow all of

the furniture. The son had been living with his father and mother as one of the family, and continued to live there and manage the hotel without any change being made in the management of the property. He had the will probated, but, though named as executor, never qualified, and never exercised any authority as such, nor attempted to carry out the provisions of the will, further than to pay certain sums to the other children as provided in the will. The hotel was subsequently sold, the widow and son both signing the deed, and part of the furniture being turned over to the purchaser apparently passing with the sale of the hotel, and not being sold for any fixed price or as the property of the widow. The widow claimed that she did not know the contents of her husband's will, and never accepted the provisions thereof, but continued to occupy the premises, claiming her community and homestead rights. *Held*, that the facts did not conclusively show an election by her to accept the provisions of the will, and whether there was such an election was a question for the jury.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2049–2052, 2061–2063; Dec. Dig. ☞792.]

**2. Wills ☞792—Election — Acts Constituting.**

An election by a widow to take under her husband's will in lieu of her community and homestead rights must be unequivocal and with the intention to make an election.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 2049–2052, 2061–2063; Dec. Dig. ☞792.]

**3. Adverse Possession ☞103—Extent of Rights Acquired.**

Where a husband at the time of his death was in possession of two lots constituting community property, but the record title to a small part of one of the lots was in a third party, and he had not acquired title thereto by limitation, if the wife remained in peaceable adverse possession, cultivating, using, and enjoying the land in question under a claim of title for the required period, she acquired title to the whole thereof, and not merely to an undivided one-half interest.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 590–594; Dec. Dig. ☞103.]

**4. Adverse Possession ☞86—Payment of Taxes—Statutory Provisions.**

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 5674, providing that every suit to recover real estate as against any person having peaceable and adverse possession, cultivating, using, or enjoying it, and paying taxes thereon, if any, and claiming under a deed duly registered, shall be instituted within five years, the party in adverse possession must pay all of the taxes, and where defendant claimed title by limitation under such article, she was bound to show the payment of city taxes, as well as a special school tax levied by an independent school district.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 504; Dec. Dig. ☞86.]

**5. Appeal and Error ☞1064 — Harmless Error—Burden of Negativing Prejudice.**

It must appear that an erroneous charge calculated to mislead the jury did not have that effect, or the judgment will be reversed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224, Dec. Dig. ☞1064.]

**6. Appeal and Error ☞1064 — Harmless Error—Instructions.**

In trespass to try title, where defendant pleaded the five and ten year statutes of limi-

tation, an erroneous instruction allowing her to prevail under the five-year statute, though she had not paid city and school taxes, could not be held immaterial, unless she was entitled to a peremptory instruction under the ten-year statute, as it was probable that the jury did not investigate the question of adverse possession for longer than five years, and it therefore probably caused the rendition of an improper verdict within rule 62a (149 S. W. x), providing that no judgment shall be reversed for an error of law in the course of the trial, unless the appellate court shall be of opinion that the error amounted to such a denial of appellant's rights as was reasonably calculated to cause, and probably did cause, the rendition of an improper judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. ☞1064.]

**7. Adverse Possession ☞115—Evidence—Issues.**

A husband at the time of his death was residing with his wife and son on two lots on which was a hotel and which constituted community property. He gave the property to the son, subject to the payment of rent to the widow during her life. The son had been living with his father and mother as one of the family and working for them as during his minority, and after his father's death he continued to manage the hotel; no change being made in the management of the property. The widow also continued to occupy the lots, and, though the son was named as executor of the will, he never qualified or exercised any authority as executor. Title to a portion of one of the lots was in plaintiff. There was evidence tending to show an election by the widow to take under the will, but she denied this and claimed to have been in possession, claiming her community and homestead rights. In plaintiff's suit against the widow and son in trespass to try title there was no testimony that the son was his mother's tenant, and it was shown that after the expiration of five years, but within ten years from the commencement of the adverse possession, he leased the disputed land from plaintiff, and there was testimony, though contradicted, tending to show that the widow knew of this lease and acquiesced therein. *Held*, that the widow was not entitled to a peremptory instruction under the ten-year statute of limitations, and an erroneous instruction allowing her to prevail under the five-year statute, notwithstanding nonpayment of taxes, was not immaterial, as the facts raised an issue as to whether the son was not in possession, and the widow merely living with him, and also raised the issue of a mixed or joint possession or occupancy, and, if this was the case, she was not in peaceable adverse possession during the time the son was also in possession under the lease from plaintiff.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 314, 691–701; Dec. Dig. ☞115.]

**8. Adverse Possession ☞68 — Mixed Possession—Effect.**

When two persons are in mixed possession of the same land, one by title, and the other by wrong, the law considers the one who has title as in possession to the extent of his rights, so as to preclude the other from taking advantage of the statute of limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 387–393; Dec. Dig. ☞68.]

**9. Adverse Possession ☞112—Evidence—Burden of Proof.**

In trespass to try title against a mother and son, where it appeared that both had been

living on the property, and that the son, within the period of limitation, had taken a lease from plaintiff, the burden was on the mother to show that she, and not the son, had possession under a claim of exclusive ownership.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 651, 653, 654, 657–659, 661–663, 665, 666; Dec. Dig. ☞112.]

10. TRIAL ☞255—INSTRUCTIONS—NECESSITY OF REQUESTS.

In trespass to try title against the widow of a former owner of lots, embracing the tract in controversy, if plaintiff desired the submission of the question as to the wife's election to take under her husband's will in lieu of her community and homestead rights, or if it desired its theory of the case presented, it should have requested proper charges.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627–641; Dec. Dig. ☞255.]

11. ADVERSE POSSESSION ☞116 — TRIAL—INSTRUCTIONS.

In trespass to try title against a mother and son, both of whom had been living on the land, and each of whom pleaded title by limitation and claimed to have had possession, where it appeared that the son, after his father's death, continued to live as theretofore as a member of the family and to manage the property, and that within the period of limitation he accepted a lease to the property from plaintiff, the refusal of an instruction that, if he had actual control and management of the property, and was authorized by his mother to control and manage her property, and that in leasing it he was acting within the scope of the authority granted to him, the jury should find for plaintiff as against both defendants, was not error.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 66; Dec. Dig. ☞116.]

12. APPEAL AND ERROR ☞1068 — HARMLESS ERROR — ERRORS RENDERED HARMLESS BY VERDICT.

In trespass to try title against a mother and son, each of whom claimed title, the refusal of an instruction to find against the son under certain facts was immaterial where the jury found for the mother, as it thereby, in effect, found against the son.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4225–4228, 4230; Dec. Dig. ☞1068.]

Appeal from District Court, Wichita County; E. W. Nicholson, Special Judge.

Trespass to try title by the Wichita Valley Railway Company against C. F. Somerville, in which Mrs. Sarah Somerville intervened. From a judgment in favor of the intervener, plaintiff appeals. Reversed and remanded.

Thompson & Barwise, of Ft. Worth, and Carrigan, Montgomery & Britain, of Wichita Falls, for appellant. A. A. Hughes and T. R. Boone, both of Wichita Falls, for appellees.

HUFF, C. J. This case was reversed and remanded upon a written opinion by the court. In its rendition we overlooked an agreement by the parties, filed in addition to the record, in which it was agreed that the filing of appellee's (Mrs. Somerville's) intervention was on the 16th day of August, 1912. This will necessitate a reconsideration of the entire case. The former opinion by this court will therefore be withdrawn.

In discussing this case we shall refer to Mrs. Sarah Somerville, who was the intervener in this case, as appellee, and her son, C. F. Somerville, either by name or as the son.

On the 4th day of November, 1911, appellant, Wichita Valley Railway Company, brought suit in trespass to try title against appellee C. F. Somerville for a small triangular piece of land out of lot 2, block 211, in the town of Wichita Falls, Tex. Thereafter, on the 16th day of August, 1912, Mrs. Sarah Somerville filed her petition for intervention in this suit, setting up her right to the land in controversy. Both C. F. Somerville and Mrs. Sarah Somerville pleaded that they were each the owners of the land by deed, and also pleaded the five and ten year statutes of limitation, seeking separate recoveries. We will not set out the pleadings of appellant and appellees more at length at this time, as we believe that the statement of the facts will sufficiently present the issue.

The Wichita Valley Railway Company alone is appealing. C. F. Somerville does not appeal, but he is made an appellee in this case. The court submitted the case to the jury on general charges, instructing the jury substantially that appellant had title to the land sued for, unless defeated by the statutes of limitation pleaded by the respective parties, and submitted the case on that theory alone. The jury returned a verdict in favor of the intervener, Mrs. Sarah Somerville, upon which judgment was rendered for her, decreeing her the land as against both appellant and C. F. Somerville. For the purposes of this opinion we do not believe it will be necessary to set out the title of the respective parties, but we find the record title is shown to be in appellant, and it should recover, unless defeated by the statutes of limitations. For convenience, and for the purpose of getting generally the issues in this case, we will adopt the statement made by appellee, but will, as we consider the several assignments, refer to such facts as may be deemed necessary in considering the same:

"On the 14th day of March, 1901, A. D. Anderson, Frank Kell, and J. J. Lory conveyed to A. J. Somerville, by their deed of that date, lots 1 and 2 in block 211 of the town of Wichita Falls, which deed embraces the land in controversy. Said deed was duly recorded in the deed records of Wichita county, Tex., on the 25th day of March, 1901; said deed was duly acknowledged. Immediately after said land was conveyed to A. J. Somerville, he and his wife, Sarah Somerville, moved into the hotel building, which was situated on both the said lots, and had a fence built around the entire lots, inclosing the same by said fence. This fence was built the last of March or about the first of April, 1901. The intervener was at that time the wife of A. J. Somerville, and they lived in the said house and ran a hotel business therein until some time in November, 1903, when A. J. Somerville died. During the lifetime of

A. J. Somerville the appellee C. F. Somerville, who was the son of A. J. Somerville and Sarah Somerville, lived in said hotel with them, and in a large part managed said hotel for them. C. F. Somerville had lived with his father and mother all of his life; had never left them, had never worked for wages, but had lived with them and worked for them just as he did when he was a minor, without making any account against him for the money that he received or making any account for his clothing, and he charged nothing for his services; in other words, he lived with them just as one of the family, as he did before he grew to manhood. He managed the hotel for them during the life of A. J. Somerville and under his direction. A. J. Somerville died in 1903, and left a will, which was duly probated in the county court of Wichita county, Tex. The will provided that C. F. Somerville should be the executor. It further provided that small sums of money should be paid to each of his other children, and that the widow, Sarah Somerville, should receive the rent from said hotel during her life, and should have all of the furniture, but devised the fee to Chas. Somerville, subject to the payment of said rent. C. F. Somerville had the will probated and filed an inventory, but never qualified as executor, and, so far as the records show, never exercised any authority as executor or attempted to carry out the provisions of the will, further than to pay the said sums of money to the other children as provided in the will.

"Lots 1 and 2 in block 211 was the community property of A. J. Somerville and intervener, and they resided on said lots up to the time of his death, and after his death intervener, Sarah Somerville, continued to occupy the same as her homestead just the same as she did before his death, and C. F. Somerville continued to manage the hotel for her just as he did for A. J. Somerville during his lifetime; in other words, the business continued after the death of A. J. Somerville just as it did before his death, no changes being made whatever in the management of the property.

"C. F. Somerville testified on the stand that he considered he had an interest in the property after his father's death, but explained what he meant by stating that it would come to him after his mother's death.

"Sarah Somerville continued to occupy said lots and building inclosed by a fence up to the time she intervened in this suit and for some time thereafter. She testified she did not know the contents of A. J. Somerville's will, and did not accept the provisions thereof, and did not accept the rent and furniture in lieu of her legal rights, but that she continued to occupy the house and premises, claiming her legal rights to the property and claiming her homestead rights therein until after she filed her plea of intervention in this suit."

[1, 2] The first assignment is urged to the action of the court in refusing to instruct peremptorily a verdict to find for appellant. The proposition under this assignment, and the only one, is there was no evidence sufficient to authorize the jury to find either for the defendant or the intervener, under the pleading setting up the statutes of limitation. We take it from the statement that the appellant's main reliance under this assignment is that the evidence is conclusive that Mrs. Sarah Somerville elected to accept under the will made by her husband. In this we do not agree with appellant. She testified that she did not do so, but at all times claimed her community interest in the property and her homestead rights on the lots.

These lots were deeded to her husband in March, 1901, and were fenced in April of that year, and remained so until after the suit was instituted against her son, C. F. Somerville, November 4, 1911. She lived in the hotel on the lots and made it her home during all those years. Under the will, she was to have all the hotel furniture and the rents from the property during her life. She testified she did not accept such property or rents in lieu of the community interest or of her homestead rights. It appears after this suit was brought the hotel was sold to one Perkins, and that she and her son signed the deed. Part of the furniture was turned over to Perkins. The testimony does not show that it was sold as her property or that any fixed price was placed on it, but it rather suggests that the property passed simply with the sale of the hotel. The mere fact that the furniture was used in the hotel, or that it was transferred with the hotel, does not conclusively show she accepted the personal property in lieu of her interest in the land. It is just as conclusive that the son claimed it as that she did, and the deed is just as conclusive that she claimed the land as that she claimed the personal property. Its use by her was not inconsistent with her undivided interest and right to exemption therein, and not conclusive that she accepted it in consideration for the relinquishment of her rights in the lots. Under the will, the son would take the father's interest, even if the wife did not accept, and the sale of the property and the manner of it indicates it was so treated by both mother and son. The husband had no right to dispose of her interest without her consent. There is no express election shown, and we think the evidence must show such election, and that she received property of value under the will to which she was not entitled otherwise. She had the right to retain the personal property until it was divided, since she had an undivided interest therein, all of which was furniture for the hotel and household and kitchen purposes. She was not called upon to divide the same by any of the heirs, and no reason is shown why she should relinquish her right of possession thereto. In the sale the son is shown to have participated therein as much as did the mother. The action of election must be unequivocal and with the intention to make an election. 40 Cyc. 1976, 1977; McClary v. Duckworth, 57 S. W. 317; Mayo v. Tudor Heirs, 74 Tex. 471, 12 S. W. 117; Gilroy v. Richards, 26 Tex. Civ. App. 355, 63 S. W. 664; Chace v. Gregg, 88 Tex. 552, 32 S. W. 520; Cobb v. MacFarland, 87 Neb. 408, 127 N. W. 377; Archer v. Barnes, 149 Iowa, 518, 128 N. W. 967.

We think the evidence raised the question of election, which was for the jury to determine under a proper charge by the court. At this time we will not notice the questions raised on the statutes of limitations, upon

which appellant probably sought an instructed verdict.

[3] The second assignment asserts error in refusing special charge No. 2, to find for plaintiff an undivided half interest in the land sued for. It asserted that, if Mrs. Somerville did not accept under the will, her claim was for an undivided half interest, and, as the son was in possession as plaintiff's tenant, appellee could get title to no more than she claimed. If Mrs. Somerville was in possession of the land, claiming it as her own for the period of time required to vest her with title, then she would recover the whole of the land, and not merely an undivided interest. At the time of the husband's death no title by limitation had vested, but was an inchoate right in the wife. If she remained in peaceable, adverse possession, cultivating, using, and enjoying the same under a claim of title, the required period, it would vest in her title to the land in question. Gafford v. Foster, 36 Tex. Civ. App. 56, 81 S. W. 63.

[4] By the third assignment appellant complains of the following charge of the court to the jury:

"You are instructed that, in order to claim land by limitation under the five-year statute, it is not necessary that the city or any special school taxes be paid by the party claiming the same."

The fourth assignment of error urges that the court was in error in authorizing the jury to find under the five-year statute of limitation in favor of Mrs. Somerville. The trial court also submitted to the jury the ten-year statute of limitation. The jury returned a general verdict in favor of Mrs. Somerville. The jury were also instructed by the trial court that in considering the five and ten year statutes they would exclude one year following the death of A. J. Somerville, the husband of appellee. The land was conveyed to A. J. Somerville March 14, 1901, and the deed therefor was filed for record on that date. He went into possession of the property April 2, 1901, and died in November, 1903. His will was probated February, 1904, and the suit was instituted against his son November 4, 1911. The executor named in his will never qualified as such, and no inventory of the property was filed. C. F. Somerville testified that he paid the taxes from 1902 to 1908, inclusive, at the courthouse, and that the taxes were paid by him to the city for the same years. On cross-examination, however, he testified he would not swear positively he paid them every year; he had no receipts and was not positive and would not swear he paid the city taxes for 1904 or 1905. The city tax collector testified the city taxes for the years 1904 and 1905 were delinquent and unpaid, and for the years 1904, 1905, 1906, and 1907 the taxes were assessed for the independent school district and were not paid. Wichita Falls is shown to be an incorporated city and to be an independent school district, and the lot in question was in that district. Bonds had been issued for the district, and taxes levied to pay the interest and sinking fund. Under these assignments the question is raised as to the correctness of the instruction that the payment of city taxes and special taxes was not necessary under the five-year statute. Under article 5674, Vernon's Sayles' Civil Statutes, suit must be brought in five years next after the cause of action accrues against a party claiming under a deed duly recorded, having peaceable and adverse possession, cultivating, using, or enjoying the same, and paying taxes thereon. It has been repeatedly held by the courts of this state that all incidents of the statute must concur and be continued for a period of five years. A failure to pay the taxes for five consecutive years had been held not sufficient to prescribe under the statute. Converse v. Ringer, 6 Tex. Civ. App. 51, 24 S. W. 705; Club Land Co. v. Wall, 99 Tex. 591, 91 S. W. 778, 122 Am. St. Rep. 666. The statute does not say that all the taxes shall be paid; neither does it say that the payment of part of the taxes will be sufficient; but the language is, "paying taxes thereon." It will be noted the statute does not say that the taxes shall be paid for five consecutive years, or that taxes shall concur with the time of the recording of the deed or with the adverse possession; but it is clearly implied from the wording of the statute. "Paying the taxes thereon" is not met by paying part of the taxes thereon. Taxes thereon include all the taxes. City taxes and school taxes are taxes thereon, recognized by both the Constitution and laws of this state. It is suggested the purpose of paying taxes is to give notice to the owner. We doubt if this is correct. Possession of the land and the recordation of the deed answers that purpose. If, however, that is its purpose, the laws and the Constitution recognize two separate assessors and collectors in county and city. If an owner should go to the city rolls and find that taxes on his property are not paid by any other, would he have the right to rest on the fact that it was not adversely held in possession under a deed duly registered? The statute says such holder shall pay taxes. The city rolls notify the owner such claimant is not doing so. These taxes are a lien on the land in the city. We believe good faith upon the part of the adverse claimant requires that he pay off this debt against the land and relieve it of the lien. In jurisdictions where there is no statute of limitations prescribing the payment of taxes as a prerequisite thereto the payment of taxes by the adverse claimant is admissible to show adverse holding. Wren v. Parker, 57 Conn. 529, 18 Atl. 790, 6 L. R. A. 80, 14 Am. St. Rep. 127. However, in Draper v. Shoot, 25 Mo. 197, 69 Am. Dec. 462, it is stated payment of taxes by a stranger tends to show knowledge of that fact by the true owner. We think under the statute that the claimant should show that he has paid the city and the special

school tax; otherwise he is holding property which he permits to become incumbered, and it is a circumstance tending to show he does not claim it adversely. Such a failure does not meet the full requirements of the statute, which all the courts hold is a necessary prerequisite to prescribe under the statute. Dunn v. Taylor, 102 Tex. 80, 113 S. W. 265. In Dutton v. Thompson, 85 Tex. 115, 19 S. W. 1026, Judge Stayton said it was not very clear why the Legislature made the payment of taxes necessary to sustain the defense of five years. It may have been to require evidence of good faith by the occupant to secure the state and its municipal subdivisions in the payment of taxes due thereon, or to give further notice of the adverse claim. It will be noted by the expression of Justice Stayton that, in his mind, at that time the statute required the payment of taxes due municipal subdivisions. If it is required for the purpose of additional notice, each tax roll, whether state, county, city, or independent school district, must each show the payment in order to give such notice; for each are required to be kept and the payment on each is notice of an adverse claim. We have been unable to find any case in this state involving the question here under construction. Counsel for both parties state that they are unable to find any case in this state. They cite us to the cases of Allen v. Allen, 159 Cal. 197, 113 Pac. 160; Railway Co. v. Pyle, 19 Idaho, 3, 112 Pac. 678; Green v. Christie, 4 Idaho, 438, 40 Pac. 56; Coonradt v. Hill, 79 Cal. 587, 21 Pac. 1099. These cases, in so far as they discuss the question, hold that all the taxes, state and special, must be paid, but we gather from the opinion of the courts this holding is based on the statute which so prescribes. However, as we interpret our statute, it clearly implies the payment of all taxes. The taxes to be paid are not specified, and the requirement for payment is not limited to any particular tax. State, county, municipal, and school taxes are each a charge on the property—made so by the Constitution and the laws. This must necessarily have been known to the Legislature, and, having failed to limit the tax to be paid, they must have intended all taxes which are a charge upon the land. We believe the court was in error in giving the charge that it was unnecessary to show the payment of city and school taxes.

[5-9] The appellee suggests that, if the trial court was in error in giving the charge, it was not material, and should not reverse the case. It is suggested the facts under the charge of the court would have authorized the verdict of the jury under the ten-year statute. The jury could have properly, under the charge of the court, based their verdict on the five-year statute. If it was apparent to us that the verdict was rendered on the ten-year statute, and not the five-year statute, we might be authorized to hold the charge harmless; but we are unable to determine from the record upon which statute the jury found. Adkins v. Galbraith, 10 Tex. Civ. App. 175, 30 S. W. 291; Thompson v. Chaffee, 39 Tex. Civ. App. 567, 89 S. W. 285–287. It must appear that an erroneous charge calculated to mislead the jury did not have that effect, or the judgment would be reversed. "In such case the duty does not devolve upon the party complaining to show that he was thereby injured, but upon him in whose favor the verdict was returned to show that the complaining party was not prejudiced by the error." Railway Co. v. Johnson, 91 Tex. 569, 44 S. W. 1067. If rule 62a (149 S. W. x) has modified the above, it is, as we conceive it, in placing the duty on the appellate court to determine whether such error amounted to such a denial of the right of appellant as was reasonably calculated to, and probably did, cause the rendition of an improper judgment. Clearly, appellant's rights required that the law applicable to the five-year statute should be correctly given, and to tell the jury that the taxes for five consecutive years was not required in order to prescribe under the five-year statute was a denial of appellant's right to have the jury told these taxes must be paid before a title would vest under the five-year statute. Under this charge it is probable the jury did not investigate the question of adverse possession longer than the period of five years. It was reasonably calculated to induce the jury to rest content with five years, and not to consider the subsequent years of possession or the acts of the parties with relation thereto, and thereby probably caused the rendition of an improper verdict. If we are correct in holding the court erroneously stated the law in his charge, then, as we believe, the only justification we would have in holding the error immaterial would be to find that appellee, under the facts, was entitled to a peremptory instruction for a verdict under the ten-year statute. The facts in this case are peculiar to it, and more so than is usual. The evidence, aside from the appellee's testimony, tends to support an election by appellee under the will, and would support a finding that she was living with her son on the property as his. This, however, appellee contends, is rebutted by the verdict of the jury. This question was not submitted to the jury by the court by a direct charge on the question, but was doubtless included in the general charge on adverse possession. The bearing the election would have on the question of limitation, however, may not have been clearly perceived by the jury; hence not given that consideration it deserved. There is no testimony that the son was the tenant of appellee. His possession, management, and control of the property is consistent with his claim of title asserted in his answer and his declaration while in possession. If he was not so in possession, then he could have been only so as the agent or servant of appellee.

The issue is raised by the evidence whether he was in possession of the property under a claim of title. If he was so in possession, claiming title, it would be adverse to appellee. After the five-year period, and before the expiration of the ten-year, he entered into a written lease contract for the land from appellant. He paid either two or three years' rental to appellant for the land, and after he refused to pay the rent he was notified by the agent of appellant to remove his fence from around the land. This he did, and moved, if not all, at least a part, back on his land. The evidence suggests that he sought advice, and thereafter replaced the fence to its original position; whereupon appellant instituted this suit for the land. Appellee testifies she knew nothing of the lease and did not consent to it. Aside from her testimony, there are circumstances from which a jury might infer she did know of it, and, if she did not consent to it, she nevertheless acquiesced. Again, the facts in this case suggest that C. F. Somerville was in possession of the land, holding or claiming it as his own, and that his mother, appellee, was living with him thereon, and not he with her. If this shall be found to be true, we see no reason why the principle announced in the case of Hurley v. Lockett, 72 Tex. 262, 12 S. W. 212, should not apply. In that case the controversy was over a strip of land growing out of the location of the true boundary between two surveys. Hurley owned one of the surveys, and M. S. Lockett owned the other. Lockett sought to establish her right to recover under the ten-year statute. Testimony was offered and rejected to the effect that, while Reuben and Charles Lockett were living on the land of M. S. Lockett, they claimed that they were the owners of the place, and they claimed at that time the boundary was where Hurley contended, and did not during the year hold the strip of land in controversy adversely to Hurley. The court held in that case this testimony should have been admitted; that it was not conclusively shown that Reuben and Charles were tenants of M. S. Lockett. There is no contention in this case that C. F. Somerville, when he gave the lease on this land, was in possession of the land as the tenant of appellee. He was there claiming title or simply living with his mother as a servant, or acting for her as agent. He managed the hotel, rented it, and mortgaged it as his own, collected the rents, and in a measure appropriated the proceeds. He had his father's will probated, and paid the legacies provided for in the will to the heirs. The furniture was retained in the hotel, which was given to appellee by the will, in lieu of her interest in the land. These facts, we think, clearly raise the issue of possession by the son under his claim of title, and, if he was so, then he relinquished it by leasing the land from appellant. Adverse possession for ten years would not, under such circumstances, be established in appellee. The facts also raised the issue of joint possession under a claim of title in the fee by both the mother and son. The son, by leasing the land from appellee, held the possession adverse to his mother for appellant, and she could not be said to be in peaceable adverse possession of the land in question. Neither the mother nor the son had the title to the land in question. There is evidence in the record tending to show that neither held and used exclusively the possession of the land and neither was the tenant of the other. Would not the acknowledgment by one of the joint possessors of title to the land in appellant and taking possession as the tenant of appellant destroy the peaceable adverse possession of the other? If the possession of the land was in the son, under a lease from appellant, this possession, it occurs to us, would be adverse to appellee. Wiley v. Bargman, 90 S. W. 1116. Unless there was such fiduciary relation existing between appellee and son, such as would preclude an adverse holding by the son, we think appellant would not be barred by the ten-year statute. Mere possession will be presumed to be in subordination to the title of the true owner. The law presumes the true owner is in possession until adverse possession is proved to begin, and when two persons are in mixed possession of the same land, one by title, and the other by wrong, the law considers the one who has title as in possession to the extent of his rights, so as to preclude the other from taking advantage of the statute of limitation. 2 Corpus Juris, Adverse Possession, § 587, p. 264; Satterwhite v. Rosser, 61 Tex. 166; Holland v. Nance, 102 Tex. 177, 114 S. W. 346. As heretofore suggested, the evidence tends to show that C. F. Somerville was claiming title to the lots and was in possession, asserting such ownership in himself, and was not in possession under his mother. If the mother was claiming ownership, and was in possession, she and her son were holding a mixed or joint possession, under different claims of title. Up to five years it may be the possession was held adverse to appellant by both mother and son, but by a joint possession, under adverse claims of title as to each other. After that period, and before the expiration of ten years, the son acknowledged the title of the true owner and leased the land and paid rent for two or three years. Appellant, then by tenant, entered into possession of the land for that period and was thus holding the possession. Appellee, under such circumstances, it occurs to us, would not during that time be in "peaceable, adverse possession." If the jury should find the mother was in possession, claiming under her community and homestead rights, and the son at the time was in possession with her, claiming title under the will, this would necessarily be a mixed pos-

session. Now, suppose the son had purchased the land from the true owner before limitation was complete, could the mother recover upon a title resting alone upon adverse possession for ten years? Did she have exclusive, peaceable, adverse possession for that period? Wherein is the difference between a purchase and a lease? The acts of the son could not have affected the rights or title which appellee may have had; yet she had none, but must rely 'upon peaceable, adverse possession to acquire one by limitation. When the son changed his attitude towards the true owner, that possession which they had theretofore held adverse to the owner ceased to be adverse. "This becomes obvious when it is reflected that, had he completed his purchase and obtained plaintiff's title, his possession would have been a rightful one held in his own right, and there could have been no holding adverse to his by other members of the family." Burrell v. Adams, 104 Tex. 183, 135 S. W. 1156. In other words, he would be the true owner in possession, and the wrongful possessor could not prevail under limitation. The rightful title would draw to it the seisin. "Adverse possession is an actual and visible appropriation of the land, commenced and continued under a claim of right, inconsistent with and hostile to the claim of another." Article 5681, R. C. S. In this state, as we understand the rule, it is not necessary to show actual notice of such possession to the true owner, but it must be actual, continuous, visible, notorious, distinct, and hostile. It is stated by the courts that such holding is necessary so "that the adverse claimant may be thus notified that his title is disputed." Gillespie v. Jones, 26 Tex. 346; Richards v. Smith, 67 Tex. 610, 4 S. W. 571; Cyc. vol. 1, p. 1032 (b).

In Richards v. Smith, supra, it is said:

"When the acts done upon a tract of land are such as to give unequivocal notice to all persons of a claim to it adverse to the claim of all others, and this is accompanied by an actual possession, exclusive in its character, then limitation will run in favor of the person so asserting adverse claim, and enjoying an exclusive possession from the time such exclusive occupancy began, whether the land be inclosed or not."

Again, it is said in Mhoon v. Cain, 77 Tex. 316, 14 S. W. 24, in order for possession to be adverse to the true owner, it "must be 'of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.'" Also see Bender v. Brooks, 103 Tex. 329, 127 S. W. 168, Ann. Cas. 1913A, 559.

Can the evidence in this case be said to conclusively show "unmistakably an assertion of claim of exclusive ownership" in appellee? She was an occupant thereon, and so was the son. If the evidence conclusively showed that the possession was her possession, and not the son's, and that she was exercising such possession under her claim of title, and which was sufficient to afford appellant notice of that fact, then we might sustain appellee's contention. We think appellant, under the evidence in this case, may well have understood she was not in possession, asserting a claim of exclusive ownership. Of course, if the facts show that appellee was so in possession, and appellant knew that fact, or if the facts show that she was in possession and so occupied the land, and it was of such a character as to unmistakably show she was asserting under such possession an exclusive ownership, then appellee would be entitled to recover. The burden is on the appellee in this case to prove such possession under claim of title.

The trial court therefore could not have instructed a verdict for appellee under the ten-year statute, and, if the charge of the court was error, as held by us, on the five-year the error was material.

[10] The fifth and sixth assignments will be overruled. The question of election under the will was one of fact. If appellee accepted under the will, she had no right to the land, and, in so far as she was concerned, the act of C. F. Somerville in leasing the land did not matter, if she was claiming the land. If appellant desired the submission of the question of her election under the will, it should have requested a charge to that effect. On the hypothesis of appellee's theory urged by her, the charges of the court objected to were correct. If appellant desired its theory presented, a proper charge should have been requested presenting its theory. On the question of election we refer to what has been said in disposing of the first assignment and the authorities cited thereunder, and we also cite the additional cases of Carroll v. Carroll, 20 Tex. 731; Moss v. Helsley, 60 Tex. 426.

For the reasons above suggested, we overrule the seventh assignment.

[11] The appellant requested the following charge:

"You are charged that, if you believe from the evidence that from 1904 to 1911 C. F. Somerville had actual control and management of the property in controversy and was authorized by his mother to control and manage her property, and that in leasing the property in controversy from plaintiff he was acting within the scope of the authority granted by his mother, you will find for the plaintiff as against the defendant and intervener."

This court is unanimous in the opinion that the trial court was not in error in refusing the above charge, and we have decided not to express the views of the majority with reference to the principles sought to be presented by the charge, and withdraw our opinion with reference to the same, heretofore filed in this case.

[12] The ninth assignment will be overruled, for the reason particularly that under the facts submitted the jury were instructed to find against C. F. Somerville. The jury,

in refusing to render a verdict for him, and finding for the intervener, practically found against C. F. Somerville, and the refusal of the charge became immaterial, if otherwise correct, which we do not now decide.

The tenth assignment is overruled. We think the charge was correctly refused.

The eleventh assignment is overruled. There was some evidence as to the payment of the taxes for the year 1903, and it would have been improper to charge the jury that there was none. If the charge had requested the issue to be submitted as one of fact to be found by the jury, it should have been given under the testimony in the record.

For the reasons given, the judgment will be reversed and the cause remanded for another trial.

The motion for rehearing will therefore be overruled, but, as we have given a different reason for reversing the case to that given in the former opinion, appellee will be permitted to file a motion for rehearing on this opinion.

### On Motion for Rehearing.

In some measure appellee's criticism of our use of joint possession in the original opinion, is correct, as there, of course, can be but one possession. We might more properly have expressed our meaning by saying "occupancy." We are well aware of the class of cases in which the question of mixed possession has found expression. This is an anomalous case. The true owner of this land found two occupants on it. One had or claimed title to it, as would appear from the probate records by will, and before ten years had elapsed he acknowledged the title of appellant and leased the land as its tenant. Thereafter the true owner is in possession by tenant. The appellee was in possession, or rather living in the house on another portion of the lot. Why should not the rule of mixed possession apply in this kind of a case? We believe it should. Again, the appellee, under the law, as we conceive it, must have had actual, open, visible, exclusive, distinct, and hostile possession. It must have been such as would give notice to the owner that its title is disputed. This joint occupancy by the mother and son, especially after the lease by the son, does not by the record, we believe, conclusively show that appellee had such exclusive hostile possession. The fact that the jury may have found such hostile possession was had for five years might be warranted under the facts; for neither mother nor son was occupying the land as the tenant of appellant up to that time. Thereafter the jury may have well concluded appellee did not have actual, exclusive, and hostile possession such as to give notice to appellant of an adverse claim of title to it.

The motion will be overruled.